**PLANNED PARENTHOOD OF SOUTHERN ARIZONA, and its corporate chapter, Arizona Women's Clinic, Inc.; Planned Parenthood of Central and Northern Arizona, Inc.; Frederic N. Stimmell, MD, individually and on behalf of his minor patients, Plaintiffs–Appellees,**

v.

**Barbara LAWALL, as County Attorney for the County of Pima, and as representative for all other prosecuting attorneys similarly situated throughout the State of Arizona, including without limitation City Attorneys; Cochise County; City of Williams, Gary Verberg as City Attorney of City of Williams; Gila County Attorney, Defendants–Appellants,**

and

**Janet Napolitano,\* Arizona Attorney General, Defendant–Intervenor–Appellant.**

No. 98–15862.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1999.

Filed June 9, 1999.

---

\* Janet Napolitano, in her official capacity as Attorney General of the State of Arizona, is

substituted in the place and stead of her predecessor, Grant Woods, pursuant to Fed.

R.App. P. 43(c)(2).

John N. Iurino, Lewis and Roca, Tucson, Arizona, for the plaintiffs-appellees.

Paula S. Bickett, Assistant Attorney General, Phoenix, Arizona, for the defendant-intervenor-appellant.

Before: CHOY and TASHIMA, Circuit Judges, and RESTANI, Court of International Trade Judge.**

TASHIMA, Circuit Judge:

We must decide whether the Arizona parental consent statute, which contains an indeterminate judicial bypass provision, and an open-ended medical emergency provision is constitutional. We hold that it is not. Planned Parenthood of Southern Arizona and its corporate chapter, Arizona Women's Clinic, Inc., Planned Parenthood of Central and Northern Arizona, Inc., and Frederic N. Stimmell, MD, individually and on behalf of his minor patients (collectively "Planned Parenthood") challenges the facial validity of the statute. The district court permanently enjoined the statute's enforcement, holding that the statute was unconstitutional due to the lack of specific time limits in its judicial bypass provision and the vagueness of its medical emergency provision. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**I.**

In 1989, the Arizona legislature adopted A.R.S. § 36–2152, a parental consent law. The district court held that the 1989 statute was unconstitutionally vague and entered a permanent injunction. *See Planned Parenthood v. Neely*, 804 F.Supp. 1210 (D.Ariz.1992). The State did not appeal.

In 1996, the Arizona Legislature repealed A.R.S. § 36–2152 (1989), and enacted a new parental consent statute, A.R.S. § 36–2152 (1996), effective July 20, 1996.[1] The statute contains a judicial bypass provision and a medical emergency bypass provision, both of which provide general time frames for expedited proceedings, but no specific time requirements. *See* A.R.S. §§ 36–2152(D), (E), and (F).

Planned Parenthood filed a motion, which the district court granted, for leave to file a supplemental complaint in the 1989 case, challenging the constitutionality of the new statute. The district court again enjoined enforcement of Arizona's parental consent law. *See Planned Parenthood v. Neely*, 942 F.Supp. 1578 (D.Ariz.1996). We reversed without reaching the merits, holding that it was error for the district court to grant leave to file a supplemental complaint in that closed action. *See Planned Parenthood v. Neely*, 130 F.3d 400 (9th Cir.1997). We remand-

---

** The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

1. This new version of the parental consent statute will hereafter be referred to as " § 36–2152" or the "statute," unless otherwise noted.

ed the case and directed the district court to dismiss it for lack of jurisdiction. *See id.* at 401.

Planned Parenthood then filed a new action challenging the facial validity of § 36–2152. The district court issued a permanent injunction against enforcement of the statute. Defendants (collectively the "State") appeal.

## II. Standard for Reviewing Facial Challenges to Abortion Statutes

■ We must first resolve the threshold issue of the proper standard for reviewing facial challenges to statutes regulating abortion.[2] The State argues for application of the test set out in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), while Planned Parenthood advocates application of the analysis in *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). This is an open question in our circuit.

In *Salerno,* the Supreme Court explained that:

A facial challenge to a legislative act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [an act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an "overbreadth" doctrine outside the limited context of the First Amendment.

*Salerno,* 481 U.S. at 745, 107 S.Ct. 2095. Thus, under *Salerno,* a facial challenge to a statute will fail if the statute has any constitutional application. The Supreme Court has previously applied *Salerno*'s "no set of circumstances" test in a few pre-*Casey* cases involving abortion statutes. *See Rust v. Sullivan,* 500 U.S. 173, 183, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991); *Ohio v. Akron Ctr. for Reproductive Health,* 497 U.S. 502, 514, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (plurality opinion) ("*Akron II* ").

In *Casey,* however, the Court held that an abortion law is unconstitutional on its face if, "in a large fraction of the cases in which [the statute] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Casey,* 505 U.S. at 895, 112 S.Ct. 2791. Although *Casey* did not expressly overrule *Salerno,* it is inconsistent with *Salerno.* Under *Salerno,* no factual showing of unconstitutional applications can render a law unconstitutional if it has any constitutional application. Under *Casey,* a factual showing of unconstitutional application in "a large fraction of the cases" where the law applies can render a law unconstitutional, even if it has some constitutional applications.

■ There is much debate over the meaning of *Casey.* Although the Court has yet to address the conflict between *Casey* and *Salerno* in a majority decision, members of the Court have offered their opinions in memoranda denying petitions for certiorari and applications for stays and injunctions pending appeals.[3] In a

---

2. Although the State contends that § 36–2152 is constitutional, it alternatively requests certification of the statute to the Arizona Supreme Court for a clarifying construction, in the event that we find the statute unconstitutionally vague. We are mindful of the Supreme Court's admonition that we should respect the role of certification in constitutional adjudication. *See generally Arizonans for Official English v. Arizona,* 520 U.S. 43, 75–80, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). We find this case unsuitable for certification, however, because, unlike the situation in *Arizonans for Official English, see id.* at 52, 117 S.Ct. 1055, the State has proffered no possible

narrowing construction of the statute that would avoid the vagueness issue. We see no way that the statute can be construed to avoid the constitutional vagueness problem short of rewriting it. In this regard, we distinguish between the Arizona Supreme Court's role as interpreter of the meaning of the laws of the State of Arizona and its role as a rule-making body.

3. We note that intermittent statements accompanying denials of certiorari or denials of stays pending appeal do not amount to intervening changes of law. *See, e.g., Causeway*

memorandum respecting the denial of the petition for certiorari in *Janklow v. Planned Parenthood,* 517 U.S. 1174, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996), Justice Stevens opined that certiorari was unnecessary because *Salerno*'s "no set of circumstances" rule was dictum and unsupported by law. Justice Stevens cited *Casey* and non-abortion cases as support for his proposition that "*Salerno*'s rigid and unwise dictum has been properly ignored in subsequent cases even outside the abortion context." *See id.* at 1175 & n. 1, 116 S.Ct. 1582.

Justices O'Connor and Souter have agreed with Justice Stevens. In *Fargo Women's Health Org. v. Schafer,* 507 U.S. 1013, 113 S.Ct. 1668, 123 L.Ed.2d 285 (1993), Justice O'Connor, joined by Justice Souter, explained the *Casey* decision:

> In striking down Pennsylvania's spousal-notice provision, we did not require petitioners to show that the provision would be invalid in *all* circumstances. Rather, we made clear that a law restricting abortions constitutes an undue burden, and hence is invalid, if, "in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion."

*Id.* at 1014, 113 S.Ct. 1668 (O'Connor, J., concurring in denial of application for stay and injunction pending appeals) (quoting *Casey,* 505 U.S. at 895, 112 S.Ct. 2791) (emphasis in original).

Other members of the Court, however, disagree with this interpretation of *Casey.* Justice Scalia, joined by Chief Justice Rehnquist and Justice Thomas, has asserted that the question of whether *Salerno* still applies in the abortion context is a "question that virtually cries out for our review." *Janklow,* 517 U.S. at 1178, 116 S.Ct. 1582. (Scalia, J., dissenting from the

denial of cert.). Additionally, Justice Scalia, joined by Chief Justice Rehnquist and Justice White, has also suggested that the only exception to the *Salerno* rule is for First Amendment cases, and "[t]he Court did not purport to change this well-established rule in [*Casey.*]" *Ada v. Guam Soc'y of Obstetricians & Gynecologists,* 506 U.S. 1011, 1012–13, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting from the denial of cert.).

Since *Casey,* many lower courts have held that *Casey* displaces *Salerno* in the abortion context. *See, e.g., Women's Med. Prof'l Corp. v. Voinovich,* 130 F.3d 187, 193–94 (6th Cir.1997) (concluding that *Salerno* is inapplicable to facial challenges to abortion regulations and applying *Casey*'s undue burden standard), *cert. denied,* —— U.S. ——, 118 S.Ct. 1347, 140 L.Ed.2d 496 (1998); *Jane L. v. Bangerter,* 102 F.3d 1112, 1116 (10th Cir.1996) (noting the difference between *Casey* and *Salerno* and applying *Casey*'s undue burden standard to facial abortion challenge); *Planned Parenthood v. Miller,* 63 F.3d 1452, 1458 (8th Cir.1995) (choosing to follow "what the Supreme Court actually did-rather than what it failed to say-and apply the undue-burden test" to facial abortion challenge);[4] *Casey v. Planned Parenthood,* 14 F.3d 848, 863 n. 21 (3d Cir.1994) (noting that Supreme Court "set a new standard for facial challenges to pre-viability abortion laws" under *Casey* ); *Hope Clinic v. Ryan,* 995 F.Supp. 847, 859–60 (N.D.Ill. 1998) (rejecting *Salerno* rule in light of *Casey*'s subsequent analysis, and applying undue burden standard); *A Woman's Choice–E. Side Women's Clinic v. Newman,* 904 F.Supp. 1434, 1447–48 (S.D.Ind. 1995) ("[T]his court believes that *Casey* effectively displaced *Salerno*'s application to abortion laws.") Thus far, only the

---

*Med. Suite v. Ieyoub,* 109 F.3d 1096, 1103 (5th Cir.1997). Accordingly, the comments of individual justices regarding the meaning of *Casey* are useful only to the extent they help illuminate the current divide in interpretation.

4. The Eighth Circuit is itself divided regarding the proper standard of review for facial challenges to abortion. Compare *Miller* with *Fargo Women's Health Org. v. Schafer,* 18 F.3d 526, 529 (1994) (deciding to analyze facial challenge to abortion regulation under both *Salerno* and *Casey* tests).

Fifth Circuit continues to apply the *Salerno* test to facial abortion challenges after *Casey*.[5] *See Barnes v. Moore*, 970 F.2d 12, 14 (5th Cir.1992).

We have previously suggested that we would apply the *Casey* rule to facial challenges of abortion regulations. In *Compassion in Dying v. Washington*, 79 F.3d 790 (9th Cir.1996) (en banc), *rev'd on other grounds sub nom., Washington v. Glucksberg*, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), we indicated that *Casey* overruled *Salerno*: "[N]ot only is there strong evidence that the Court does not generally apply the *Salerno* test, but it is clear that it has applied a different test for judging the constitutionality of statutes restricting a woman's rights to secure an abortion." *Id.* at 798 n. 9 (citations omitted). In light of our previous suggestion, combined with the great weight of circuit authority holding that *Casey* has overruled *Salerno* in the context of facial challenges to abortion statutes, we apply *Casey*'s undue burden standard in determining the facial constitutionality of § 36–2152.

### III. Judicial Bypass Provision

■■ A district court's grant of permanent injunctive relief is reviewed for an abuse of discretion or application of erroneous legal standards. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1493 (9th Cir.1996). The interpretation and construction of a statute is a question of law reviewed de novo. *See Alexander v. Glickman*, 139 F.3d 733, 735 (9th Cir.1998).

■ Planned Parenthood first challenges the judicial bypass provision of § 36–2152, which provides, in pertinent part:

D. Proceedings in the court under this section are confidential and have precedence over other pending matters. The court shall reach the decision promptly and without delay to serve the best interests of a pregnant minor. A judge who conducts proceedings under this section shall make in writing specific factual findings and legal conclusions supporting the decision and shall order a confidential record of the evidence to be maintained including the judge's own findings and conclusions.

E. An expedited confidential appeal is available to a pregnant minor for whom the court denies an order authorizing an abortion without parental consent ... Access to the trial court for the purposes of a petition or motion, and access to the appellate courts for purposes of making an appeal from denial of the petition or motion is available twenty-four hours a day, seven days a week.

Planned Parenthood argues that the lack of any specific time frame or deadlines in the bypass provision is fatal to the statute's constitutionality, since the general, nonspecific requirement that judicial action be prompt does not guarantee a sufficiently expeditious procedure for obtaining an abortion via the bypass provision. The State counters that the lack of specific time limits in the state trial courts do not operate as a substantial obstacle to a minor's choice to undergo an abortion because of the statute's directive to the Arizona courts to act "promptly and without delay."

■ Both sides rely on *Bellotti v. Baird*, 443 U.S. 622, 643–44, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (plurality) (*"Bellotti II"*), to support their opposing claims. In *Bellotti II*, the Supreme Court held that if a state decides to require a pregnant minor to obtain one or both parents' consent to an abortion, the state also must provide an alternative procedure under which authorization for the abortion can be obtained. *See id.* at 643, 99 S.Ct. 3035. A pregnant minor is entitled in such a proceeding to show that either: (1) she is mature enough and well-informed enough to make her abortion decision, in consulta-

---

5. The Fourth Circuit has indicated in dicta that it does not believe *Casey* overrules *Salerno*, but ultimately declined to reach the issue. *See Manning v. Hunt*, 119 F.3d 254, 268 n. 4 (4th Cir.1997).

tion with her physician, independently of her parents' wishes; or (2) even if she is not able to make this decision independently, the desired abortion would be in her best interests. *See id.* The proceeding in which this showing is made must assure that a resolution of the issue, and any appeals that may follow, will be completed with sufficient expedition to provide an effective opportunity for an abortion to be obtained. *See id.*

In subsequent cases, the Court has repeatedly affirmed *Bellotti II*'s holding. *See Lambert v. Wicklund,* 520 U.S. 292, 295, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997); *Akron II,* 497 U.S. at 510, 110 S.Ct. 2972 (1990); *Hodgson v. Minnesota,* 497 U.S. 417, 461, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (plurality opinion); *Planned Parenthood Ass'n v. Ashcroft,* 462 U.S. 476, 491 n. 16, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983). The Court has never considered, however, a facial challenge to a judicial bypass provision containing only a general directive to the courts to proceed expeditiously. Instead, all previous judicial bypass provisions considered by the Court have been those in which the bypass provision either contained specific time limits or had already been narrowed by the state courts' interpretations and application. For example, both *Wicklund* and *Akron II* involved parental notice statutes which had specific time limits: *Wicklund* involved a Montana statute which required the youth court to rule within 48 hours of the time that the petition was filed, *see* 520 U.S. at 293–94, 117 S.Ct. 1169, and *Akron II* concerned an Ohio statute which required the juvenile court to hold a hearing not later than the fifth business day after the complaint was filed, *see* 497 U.S. at 508, 110 S.Ct. 2972.[6]

■ Like *Wicklund* and *Akron II, Ashcroft* involved a Missouri parental consent statute with a judicial bypass provision containing specific time limits for the trial courts. The Missouri statute required the trial court to hold a hearing on the merits within five days of the filing of petition.[7] The *Ashcroft* plurality did hold that the Missouri judicial bypass provision was consistent with the *Bellotti II* requirements. However, the Court never discussed the statute's time limits for the trial court, but noted only the constitutionality of the appellate review procedures. *See id.* at 491 n. 16, 103 S.Ct. 2517 (stating that general directive for expedition provides an effective framework for appellate review in the absence of any other contrary evidence). Section 36–2152(E) provides a directive for appellate expediency similar to *Ashcroft*'s. Therefore, under *Ashcroft,* Subsection (E), standing on its own, is not unconstitutionally vague.

This interpretation of Subsection (E), however, does not help save Subsection (D). For a judicial bypass provision to avoid fatal vagueness under *Bellotti II,* the trial court's review of a minor's application must be performed within specific, determinate time limits. "[A bypass provision] must *assure* that a resolution of the issue, and any appeals that may follow, will be completed with ... sufficient expedition to provide an effective opportunity for an abortion to be obtained." *Bellotti II,* 443 U.S. at 644, 99 S.Ct. 3035 (emphasis added). A lack of specific time limits at the trial court level hinders any effective opportunity for obtaining an abortion, because the trial court could delay the bypass procedure for a sufficient period to render it practically unavailable. The con-

**6.** The State relies on *Akron II* to support its contention that Arizona's judicial bypass procedure is constitutional. The *Akron II* Court held that a procedural delay of up to 22 days, in a worst case scenario, was constitutional. *See id.* at 514, 110 S.Ct. 2972. The Arizona statute, however, unlike the *Akron II* bypass provision, has no definitive time frame at all. Thus *Akron II,* to the extent it supports a procedural delay of up to 22 days, does not control the constitutionality of the Arizona statute.

**7.** Mo.Rev.Stat. § 188.028 provided, in relevant part, that "[a] hearing on the merits of the petition, to be held on the record, shall be held as soon as possible within five days of the filing of the parties." *See Ashcroft,* 462 U.S. at 479 n. 4, 103 S.Ct. 2517.

stitutionality of the appellate court review in a judicial bypass procedure is closely linked to the constitutionality of the trial court's review period. An open-ended initial review period for the trial courts necessarily hinders any possible expediency for the appellate courts, because there would be no way to ensure a ~~timely~~ appeal if the trial-level review was not confined to a certain time limit. Unlike the Arizona statute at issue here, the Missouri statute in *Ashcroft* contained a judicial bypass provision which imposed a specific time constraint on the district court's review of a minor's petition. Accordingly, *Ashcroft* cannot support § 36–2152(D)'s constitutionality.

The Court has also found constitutional judicial bypass procedures without trial court time limits where the record demonstrated that the statute had been applied by state courts in a timely fashion to afford minors prompt and expeditious hearings. In *Hodgson*, the plurality held that a judicial bypass procedure which had no specific time limits in a two-parent notification statute was constitutional because the Minnesota state courts had previously operated a judicial bypass provision, and could provide real evidence of their timely processing of bypass applications.[8] *See* 497 U.S. at 440–42, 110 S.Ct. 2926.

Like the Court's decision in *Ashcroft*, however, there was little to no discussion in *Hodgson* regarding the adequacy of the statutory bypass provision for the trial courts. Instead, the Court merely affirmed its four-part test as articulated in *Bellotti II*:

> [T]his Court has explicitly approved judicial bypass as a means of tailoring a parental consent provision so as to avoid

unduly burdening the minor's limited right to obtain an abortion. . . . Subdivision 6 passes constitutional muster because the interference with the internal operation of the family required by subdivision 2 simply does not exist where the minor can avoid notifying one or both parents by use of the bypass procedure.

*Hodgson*, 497 U.S. at 461, 110 S.Ct. 2926 (O'Connor, concurring in the judgment). Accordingly, as the State has provided no evidence of the timely processing of bypass applications by its trial courts, *Hodgson* has little bearing on the status of § 36–2152(D).

In *Glick v. McKay*, 937 F.2d 434 (9th Cir.1991), we determined the constitutionality of a bypass procedure in a Nevada parental notification statute.[9] The Nevada statute provided a multi-tiered judicial bypass procedure, but did not, on its face, provide a time frame within which a minor's bypass application was to be decided. *See id.* at 437–38. We found the lack of a time limit on the period for the district court's review of the minor's petition fatal to the statute's constitutionality, as the district court could delay the bypass procedure indefinitely. *See id.* at 440. We there held:

> Because time is such a critical factor, relating both to a woman's health and the exercise of her constitutional right to an abortion, we conclude that the [ ] bypass procedure, which does not contain a time period within which the state district court must rule on a minor's [ ] petition and thus may delay her right to implement the bypass procedure, possibly indefinitely, does not sufficiently

8. The evidence in the lower court was as follows: (1) the majority of the bypass petitions were filed in three metropolitan counties, where courts scheduled bypass hearings on a regular basis and had procedures in place for hearing emergency petitions; (2) the courts in non-metropolitan areas were acquainted with the statute and, for the most part, applied it conscientiously; and (3) typically, a minor waited only two or three days to schedule a petition hearing. *See id.*

9. The Supreme Court has disapproved the analysis in *Glick*, in which we held unconstitutional a bypass procedure which allowed a minor to have an abortion if parental notification, and not the abortion itself, was not in the minor's best interests. *See Wicklund*, 520 U.S. at 297–99, 117 S.Ct. 1169. Nothing in *Wicklund*, however, affects *Glick*'s holding regarding *Bellotti II*'s expediency requirement.

protect a pregnant minor's constitutional right to an abortion.

*Id.* at 442.

Likewise, the Fifth Circuit struck down as unconstitutional a Louisiana judicial bypass procedure with indefinite time limits. In *Ieyoub,* the court found that the statute's bypass provisions did not provide for an expeditious resolution of a minor's bypass application. *See* 109 F.3d at 1110. The bypass procedures at issue, which provided for proceedings in a "summary manner," was determined to be too open-ended to survive constitutional scrutiny under *Bellotti II:*

> [The bypass provision] provides that in a summary proceeding, "[t]he court shall render its decision *as soon as practicable* after the conclusion of the trial of a summary proceeding and, *whenever practicable,* without taking the matter under advisement." Such an open-ended bypass procedure has never been approved. We should not, as the Supreme Court has suggested, "invalidate [a bypass] statute on a facial challenge based upon a worst-case analysis that may never occur." ... An indefinite period, however, has been rejected.... [The bypass procedures] plainly conflict with *Bellotti II* because the juvenile court is not required to rule on the minor's application within any specified time nor are state counselors required to report back to the juvenile court within any specified time. We hold that "whenever practicable" does not satisfy constitutional standards of expediency. There is no fallback (or constructive authorization) provision within [the bypass procedure] that deems a minor's application granted in the event the juvenile court does not act within a particular time frame. Thus, not only do [the bypass procedures] fail to provide any specific time within which a minor's application will be decided, but they give no assurances (assurances required by *Bellotti II* ) that the proceedings will conclude expeditiously.

*Id.* at 1110–11 (citations omitted) (emphasis in original). Like §§ 36–2152(D) and (E), the bypass provision at issue in *Iey-*

*oub* provided a general directive to process a minor's application expeditiously, but failed to specify any specific time limits.

Open-ended bypass provisions engender substantial possibilities of delay for minors seeking abortions. Such risks of delay are of particular concern with respect to minors. Many teenagers put off their abortion decision until late in the first trimester. *See American College of Obstetricians v. Thornburgh,* 656 F.Supp. 879, 887 (E.D.Pa.1987). Minors typically wait longer than adult women to seek an abortion for a variety of factors: because they are unable to recognize that they are pregnant due to irregular menstrual periods; because they face problems in arranging to have the abortion at a time that does not arouse the suspicion of parents, friends, or others; and because they have difficulty in raising the funds for an abortion. Thus, time is of particular significance in the case of a minor female in that with delay, the procedure becomes less safe, more expensive, and less available. *See Memphis Planned Parenthood, Inc. v. Sundquist,* 175 F.3d 456, 479–80 (6th Cir.1999) (Keith, J., dissenting). Arizona's open-ended judicial bypass provision, with only a vague, general directive that the proceedings "have precedence over other pending matters" and that decisions should be made "promptly and without delay," can only exacerbate the risks to minors arising from delay.

Minors seeking judicial authorization for abortions will compete in Arizona's courts with numerous other cases which have also been granted statutory priority, since § 36–2152 is not the first Arizona statute to grant priority to a favored class of plaintiffs. *See, e.g.,* A.R.S. § 8–236 (appeals of juvenile court decisions given "precedence over all other actions except extraordinary writs or special actions"); A.R.S. § 12–931 (appeal from proceedings regarding constitutionality of state statute or administrative order "shall be given precedence, and expedited in every way, and shall be assigned for hearing at the

earliest practicable day"); A.R.S. § 16–351 (action challenging candidate nominating petition must be heard and decided by trial court within ten days after filing; such actions appealable only to Arizona Supreme Court, which "shall hear and render a decision on the appeal promptly"); A.R.S. § 16–676 (court shall hear election contest not later than ten days after filing); A.R.S. § 36–546.01 (appeal from order of court-ordered mental health treatment "shall be entitled to preference"); A.R.S. § 45–1223 (appeals of decisions of Director of Water Resources have precedence, in every court, over all other civil proceedings); A.R.S. § 49–321 (water quality appeals have precedence, in every court, over all other civil proceedings); A.R.S. §§ 49–443, 49–497 (appeals of decisions of State and County Air Pollution Controls Boards shall be given precedence over matters that do not affect public health and welfare); Ariz. R.Crim. P. 31.14 (criminal appeals shall have precedence over all other appeals except those from juvenile actions or where otherwise provided by law; appeals where defendant sentenced to death shall have precedence over all other appeals).[10]

Moreover, the statute, unlike the 1989 version, has no requirement that the Arizona Supreme Court promulgate appropriate procedural rules for its implementation.[11] Without such implementing rules, each trial court will be on its own to prioritize these cases, consistent with the demands of its own caseload and its understanding of the constitutional standards attending judicial bypass provisions. Case

loads will obviously vary, and as demonstrated by the cases discussed here, the law is complex and subject to various interpretations.

Finally, the judicial bypass provision ignores the realities of the judicial process. As the district court concluded:

> The statutory requirement that minors shall have access to the trial and appellate courts 24 hours a day, 7 days a week is meaningless.... [B]y local rule the trial courts are open only during regular business hours. Even if courts have 24 hour drop boxes for 24 hour filing of documents, this is not around the clock access to courts. Judges, law clerks, court reporters, and others, necessary for judicial action are not available on a 24 hour basis, seven days a week. This provision, therefore, assures nothing by way of expedition [and] the ambiguity leaves the trial and appellate courts guessing at legislative intent.

(Dist. Ct. Order of Mar. 31, 1998 at 18).

The statute's lack of specific time limits for the Arizona trial courts ultimately means there is no assurance that the bypass mechanism will provide an expeditious alternative to obtaining parental consent, and therefore comprises a substantial obstacle to abortion in a large fraction of cases in which the statute applies. The procedures for a judicial bypass, taken as a whole, do not provide an appropriate framework for a constitutionally sufficient means for expedited judicial resolution of any petitions. Accordingly, we hold that,

---

**10.** The State argues that the mere fact that there are many matters requiring expedited attention by the courts does not mean that superior court judges will not understand that they must act quickly to avoid delaying the abortion decision to the detriment of the interests of the pregnant minor. We do not intend to portray state court judges as individuals who would intentionally violate *Bellotti II*. Rather, we merely recognize that the statute does not require that the state trial court conduct its review within any bounded time period, therefore denying a minor an effective opportunity to obtain an abortion. *See Ieyoub*, 109 F.3d at 1111 (concluding same).

**11.** In the 1989 version, A.R.S. § 36–2152 was accompanied by a procedural statute, A.R.S. § 36–2153, which identified procedural measures for confidentiality and expediency, and required the Arizona Supreme Court to adopt rules providing for expedited appellate review of bypass cases. Such a rule, Rule 102, was adopted. In 1992, after the district court enjoined enforcement of A.R.S. § 36–2152 (1989), Rule 102 was never implemented, and never became operational in Arizona's courts. In 1996, when § 36–2152 was enacted in its current form, A.R.S. § 36–2153 was repealed, and Rule 102 became meaningless.

because of its indefinite time periods, Arizona's judicial bypass provision fails to meet the *Bellotti II* expediency criterion.

## IV. Adequacy of Exception for Emergency Abortion

■■■ The medical emergency provision, § 36–2152(F), provides:

> Parental consent or judicial authorization is not required under this section if the attending physician certifies in the pregnant minor's medical record that, on the basis of the physician's good faith clinical judgment, the pregnant minor has a condition that so complicates her medical condition as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of major bodily function and there is insufficient time to obtain the required parental consent or judicial authorization.

Planned Parenthood argues that the medical emergency provision precludes doctors from having information they need to gauge whether the time required to obtain a bypass will put the minor at risk. The State counters that the statute's emergency provision is adequate to allow a physician to exercise a good faith clinical judgment to forgo consent and proceed with an abortion.

The district court found that the failure to include a time frame within which the judicial bypass provision operates was fatal to the medical emergency provision's constitutionality:

> To rely on the medical bypass provision, a doctor must know how long it will take to obtain judicial authorization. For example, if the bypass procedure takes approximately three days, the abortion might be delayed without severe medical consequences, whereas, waiting five, six, or more days, might impose serious medical risks. Doctors must be able to make the assessment within some designated time frame or be forced to determine the emergency of the situation on a daily or perhaps hourly basis. Doctors will be inclined to wait until the last minute before utilizing the medical bypass procedure to ensure their protection under the statute when performing an abortion on a minor without parental consent or judicial authorization. This is an impractical and an unacceptable medical risk.

(Dist. Ct. Order of Mar. 31, 1998 at 20).

There is little case law on the adequacy of a medical emergency provision. Although the Eighth Circuit, in *Fargo Women's Health Org.*, considered a North Dakota statute with a similar medical emergency provision, that court never addressed the time frame of the provision, but instead focused its analysis on the definitions of such terms as "major bodily function," "immediate" and "grave." [12] *See* 18 F.3d at 534. Additionally, the North Dakota statute was an informed consent statute, not a parental consent statute, and therefore had no judicial bypass provision upon which the medical emergency provision depended.

*Hodgson* also involved a medical emergency provision, although the Court did not discuss it.[13] *See* 497 U.S. at 426, 110 S.Ct. 2926. The State contends that the similarity of the Arizona statute to the Minnesota statute supports the Arizona

---

12. The North Dakota medical emergency provision eliminated any waiting period if there was "grave peril of immediate and irreversible loss of major bodily function." *See* 18 F.3d at 534.

13. The Minnesota statute's medical emergency provision provided that no notice is required if:

(a) The attending physician certifies in the pregnant woman's medical record that the abortion is necessary to prevent the woman's death and there is insufficient time to provide the required notice; or

(b) The abortion is authorized in writing by the person or persons who are entitled to notice; or

(c) The pregnant minor woman declares that she is a victim of sexual abuse, neglect, or physical abuse.

*See* 497 U.S. at 426 n. 7, 110 S.Ct. 2926.

emergency provision's constitutionality, since the Minnesota emergency exception was not struck down by the Supreme Court. As we noted above, however, the Minnesota courts had previously operated a judicial bypass system and were able to provide evidence of expedient processing of minors through the court system. *See id.* at 440–42, 110 S.Ct. 2926. Therefore, Minnesota's medical emergency provision, relying as it did on the bypass provision, was found to be constitutional. Here, the State has provided no such evidence of prior expedient processing; thus, it cannot rely on *Hodgson* to support its emergency provision's constitutionality.

By failing to provide any deadlines by which the bypass petition must be decided, the Arizona statute hinders the doctor from making the necessary informed judgments. An Arizona doctor cannot determine whether or not there is insufficient time to obtain a judicial waiver of the consent requirement because there is no way of knowing in advance how long that process will take, or even of making a reasonably accurate estimate. The doctor must reach a decision without critical facts, yet faces criminal exposure for noncompliance with the parental consent statute. *See* § 36–2152(G).[14] Even if we assume that words of expedition alone are sufficient for the judicial bypass provision to pass constitutional muster, the doctor still does not know how long the bypass procedure will take. The statute is simply too vague to give the doctor notice of the criminal conduct prohibited by Subsection (G). *See Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

Under *Casey,* statutes regulating abortions must permit doctors to perform immediate abortions when necessary to avert significant health risks to the wom-

an. *See Casey,* 505 U.S. at 880, 112 S.Ct. 2791. The lack of specific time limits in the statute's judicial bypass provision renders the medical emergency provision unconstitutionally vague, making it a substantial obstacle to abortion in a large fraction of cases in which it applies. Accordingly, we hold that the statute's medical emergency provision is unconstitutional.

## V. Conclusion

As a result of the indefinite time limits of the judicial bypass provision and the vagueness of the medical emergency provision, we hold § 36–2152 to be unconstitutional. Accordingly, the district court's injunction permanently enjoining the State from implementing or enforcing the provisions of A.R.S. § 36–2152 in any manner is

**AFFIRMED.**

---

14. Section 36–2152(G) provides:

A person who performs an abortion in violation of this section is guilty of a class 1 misdemeanor and is subject to a civil action by a person who was wrongfully denied the right to consent. A person is not subject to civil or criminal liability under this section

if the person establishes by written evidence that the person relied on evidence sufficient to convince a careful and prudent person that the representations of the pregnant minor regarding information necessary to comply with this section are true.