**NOVA HEALTH SYSTEMS, d/b/a Reproductive Services, on behalf of itself, its staff and its patients, Plaintiff,**

v.

**W.A.Drew EDMONDSON, in his official Capacity as Attorney General of the State of Oklahoma; and Tim Harris, in his official Capacity as Tulsa County District Attorney, and their employees, agents and successors in office, Defendants.**

No. 05–CV–280–HDC–FHM.

United States District Court,
N.D. Oklahoma.

May 27, 2005.

Order Denying Motion for Injunction
Pending Appeal June 10, 2005.

Bebe Jill Anderson, Galen Sherwin, New York City, Janet Lynne Crepps, Simpsonville, SC, Martha Moody Hardwick, Hardwick Law Office, Tulsa, OK, for Plaintiff.

Elizabeth Rose Sharrock, Guy Lee Hurst, Office of the Attorney General, Oklahoma City, OK, David Thomas Iski, James Dashiell Dunn, District Attorney's Office, Tulsa, OK, for Defendants.

## ORDER

H. DALE COOK, Senior District Judge.

The Court has before it the plaintiff's motion for temporary restraining order and/or preliminary injunction. On May 24, 2005, following notice to the defendants and an opportunity to respond, the Court conducted a hearing on the plaintiff's motion. At the conclusion of the hearing, the Court took the issue of injunctive relief under advisement. Now, having considered the arguments of counsel, the plead-

ings and applicable law, the Court finds as follows.[1]

On May 20, 2005, Governor Brad Henry signed into law Okla. H.B. 1686, 50th Leg., 1st Reg. Sess. (Okla.2005), to be codified at Okla. Stat. tit, 63, §§ 1–740.1 to 1–740.5. The plaintiff challenges only Sections 11 through 15 of that Act. ("the Act"). The Act, by its terms, immediately became effective upon the Governor's signature. The Act establishes a parental notification requirement, with a judicial bypass provision, before an abortion may be obtained by an unemancipated minor or a female for whom a guardian has been appointed ("minor"). Specifically, the Act prohibits a physician from performing an abortion on a minor unless, forty-eight hours in advance of the procedure, notice of the anticipated abortion is provided to one of the minor's parents. The Act provides that no notice is required when a physician certifies that the abortion is necessary to prevent the mother's death, or if there is insufficient time to provide the required notice, or if the delay would create a serious risk to the minor of substantial and irreversible impairment of a major bodily function. The Act also includes a judicial bypass provision which allows the minor to petition "any judge of a court of competent jurisdiction" to authorize her abortion without notification to one of her parents. The court shall authorize the abortion if the minor is found to be mature and capable of giving informed consent. If she is found not to be mature, or if the minor does not claim to be mature, the court shall authorize the abortion without a parental notification if it is found to be in the minor's best interest. The Act confers upon every minor who avails herself of the judicial bypass procedure the right to participate in the court proceeding on her own behalf or to have counsel appointed to assist her throughout the proceeding.

The Act mandates that the proceeding shall be confidential and shall be given precedence over other pending matters so that the court may reach a decision promptly and without delay so as to serve the best interest of the minor. The judge is required to make, in writing, specific factual findings and legal conclusions supporting the decision, and to record the proceeding. An expedited confidential appeal is available to the minor if the court denies authorization of an abortion without notification. However, an order authorizing the abortion without notification is non appealable. All filing fees are waived, and access to file motions or pleadings to the trial and appellate courts is afforded to the minor twenty four hours a day, seven days a week.

At 4:30 p.m., immediately following Governor Henry's signing the Act, plaintiff filed the subject motion for temporary restraining order and/or preliminary injunction requesting this Court to enjoin enforcement of the Act as "fatally flawed." At the onset, it is important to correct any misconceptions of the limited issue raised in the plaintiff's motion for injunctive relief. The plaintiff is not challenging the parental notification or judicial bypass provisions contained in the Act. In its motion, plaintiff challenges *only* the purported lack of any time limits regarding the judicial bypass provision. Specifically, plaintiff claims the Act "fails to establish a definite, specific time frame for determination of either petitions for a judicial bypass or appeals from denials of judicial bypass petitions, thus failing to guarantee that such

---

**1.** On May 23, 2005, the defendant Tim Harris, in his official capacity as Tulsa County District Attorney, separately filed a motion to dismiss for lack of jurisdiction. The Court will address defendant Harris' motion after the plaintiff has had an adequate opportunity to respond.

proceedings will be expeditious, as constitutionally required in the time-sensitive context of abortion."

■ The Supreme Court has established specific guidelines to be followed by states when enacting statutes requiring a parental notification before a minor may obtain an abortion. In *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II*), the Supreme Court imposed a requirement that any parental notification statute must also afford to the minor a judicial bypass as "an alternative procedure whereby authorization of an abortion can be obtained" [without parental notification]. *Id.* at 643, 99 S.Ct. 3035. To be valid, the judicial bypass proceeding must meet the following test:

> A pregnant minor is entitled in such a proceeding to show either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests. The proceeding in which this showing is made must assure that a resolution of the issue, and any appeal that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained.

*Id.* at 643–44, 99 S.Ct. 3035 (footnote omitted).

The Supreme Court stated that any state enacted judicial bypass procedure must ensure that the provision requiring parental notification does not in fact amount to the "absolute, and possible arbitrary, veto on a minor's right to obtain an abortion." *Id.* "The constitutional right to seek an abortion may not be unduly burdened by state-imposed conditions upon initial access to court." *Id.* at 648, 99 S.Ct. 3035. It is in view of the Supreme Court's

requirement that any judicial bypass provision must assure that resolution of the issue will be completed with "sufficient expedition to provide an effective opportunity for an abortion to be obtained" and not to "unduly burden" the minor's initial access to the courts, that the Act herein must be tested. If the Act complies with the requirements of *Bellotti II,* the Act cannot be found to be unconstitutional on its face.

## Discussion

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir.1984). "Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established." *Goldammer v. Fay,* 326 F.2d 268, 270 (10th Cir.1964). In this circuit, a party seeking a preliminary injunction must satisfy four prerequisites: "(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest." *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). A right to relief must be clear and unequivocal. *Salt Lake Tribune Publishing Co. v. AT & T Corp.,* 320 F.3d 1081, 1099 (10th Cir.2003) (citing *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir.2001)). Because the plaintiff must satisfy each of the four prerequisites to be entitled to injunctive relief, a finding that the plaintiff has failed to establish one or more of the four criteria would be sufficient to deny the plaintiff's motion.

*Substantial likelihood of success on the merits*

As to the first element, the plaintiff must establish a prima facie case showing a reasonable probability that it will ultimately prevail on its claim that the judicial bypass provision is insufficient under the requirements of *Bellotti II* and is therefore unconstitutional.

█ Plaintiff claims the Act violates the privacy rights of the plaintiff's minor patients by failing to guarantee an expeditious alternative procedure by which a minor can obtain a waiver of the notification requirement. The plaintiff argues that the Act is open-ended and does not on its face provide a time frame within which the minor's judicial bypass application is to be decided because the Act fails to set forth a definitive time-limit either for the district court to reach its decision or for any appeal to be resolved. The plaintiff argues the Act states only that the court "may reach a decision promptly and without delay so as to serve the best interest of the pregnant unemancipated minor, H.B. 1686, § 13.C, and that 'an expedited confidential appeal shall be available to any pregnant unemancipated minor for whom the court denies an order authorizing abortion without notification.'" H.B. 1686, § 13. D.

The Court finds no merit in the plaintiff's contention. On its face, the statute clearly comports with the above stated requirements of *Bellotti II.* The Act provides to the minor complete access to the state court system, without jurisdictional or venue limitations. It allows the minor to file her petition before "any judge of compe-

tent jurisdiction." *See,* H.B. 1686, § 13.A. There are no time restrictions imposed by allowing her access twenty-four hours a day, seven days a week. *See,* H.B. 1686, § 13. D. The minor suffers no burden of paying filing costs or attorney fees, nor proving her indigence. *See,* H.B. 1686, § § B and D. Her petition is to be heard expeditiously and is to be given precedence over other pending matters. *See,* H.B. 1686, § 13. B. There are no evidentiary hurdles to overcome, such as, opinions or evaluations from physicians, clinic counselors, psychiatrists or social welfare workers. The court is to conduct an "appropriate hearing" wherein no evidence is required other than the minor's own statement. *See,* H.B. 1686, § 13.A. The decision making process is tailored to accommodate exigent circumstances by requiring "a decision promptly and without delay so as to serve the best interests" of the minor. The best interest of the minor is the guidepost and time restraint imposed by the Act. *See,* H.B. 1686, § 13.C. An order denying an abortion can be appealed on an expedited basis, but an order authorizing an abortion without notification is not subject to appeal. *See,* H.B. 1686, § 13. D. This non-adversary process, assures expedition. Plaintiff has made no showing that the Oklahoma courts have not or will not act expeditiously as mandated by the Act.[2]

The legislature has mandated that Oklahoma courts shall act expeditiously in determining petitions and motions filed by minors seeking an abortion. Plaintiff claims that the Act does not include any guarantee or a definite and specific time frame for determining judicial bypass mo-

---

**2.** The Court will note that the Act provides sufficient flexibility for the minor to control the time frame or urgency for her petition and appeal. There is a real concern that a minor who is incapable or unable to comply with a statutorily limited filing period may be foreclosed from judicial bypass. For example, a parental and judicial bypass statute enacted

in North Carolina stated a minor *must* file her appeal within 24 hours from the date of the issuance of the state district court's order denying her an abortion without parental consent. *See, e.g. Manning v. Hunt,* 119 F.3d 254, 258 (4th Cir.1997) (referencing N.C. Gen.Stat. § 90–21.8 h)

tions and appeals. Some state supreme courts have promulgated appropriate procedural rules for the implementation of judicial bypass legislation. *See, e.g. Manning v. Hunt,* 119 F.3d at 258. Article VII, Section 6 of the Oklahoma Constitution vests in the Oklahoma Supreme Court the power to make rules, for itself and all lower courts, as well as, general administrative control over all state courts. The Oklahoma Supreme Court's power to make rules is also recognized by statute:

> The rule making power of the Supreme Court is not only conferred by Art. VII, Sec. 6, which establishes the general administrative control of the Supreme Court over all inferior courts, but is specifically mandated by legislation, 12 O.S.1971, § 74, which provides:
>
>> 'The Justices of the Supreme Court shall meet every two years during the month of June at the capital of the State and revise their general rules, and make such amendments thereto as may be required to carry into effect the provisions of this code, and shall make such further rules consistent therewith as they may deem proper. The rules so made shall apply to the Supreme Court, the district courts, the superior courts, and county courts and all other courts of record.'

*Eberle v. Dyer Construction Company,* 598 P.2d 1189, 1192 (Okla.1979).

The legislature cannot, by statute, limit the inherent power of the Supreme Court, as authorized by the Constitution, to enact rules:

> Courts in this state possess inherent powers to regulate the procedure by which rights are judicially enforced. For example: 'The courts of general jurisdiction under such a Constitution have the inherent power to do whatever

may be done under the general principles of jurisprudence to insure to the citizen a fair trial, whenever his life, liberty, property, or character is at stake. The possession of such power involves its exercise as a duty whenever public or private interests require.' This Court needs no authorization conferred by the Legislature to make rules for the orderly procedure of hearing cases in District Courts. A 'court' is defined, in part, as an entity that hears cases. We have said that: 'We hold power to 'hear' a case includes power to make, and enforce, reasonable rules for orderly procedure before courts.'

*Boston v. Buchanan,* 89 P.3d 1034, 1037 n. 1 (Okla.2003) (internal citations omitted).

Thus, though Okla. Stat. tit. 12, § 74 authorizes the Oklahoma Supreme Court to meet every two years to make rules, the Oklahoma Supreme Court clearly has an inherent power to make rules as needed, a power that derives from its authority under the Oklahoma Constitution, not from legislative enactment.

■ As already discussed, when reviewing the Act's judicial bypass provision, a court's primary focus is on the standards set forth in *Bellotti II.* A statute which is addressed by and in compliance with *Bellotti II* cannot be said to create an undue burden on the minor seeking an abortion and therefore it is not unconstitutional. See, *Manning,* 119 F.3d at 262–263. The establishment of rules and procedures to implement the judicial bypass provision enacted by the Oklahoma legislature is within the authority of the Oklahoma Supreme Court. The plaintiff has failed to establish that the Act fails to comply with *Bellotti II* and thus the plaintiff has not made a prima facie showing of likelihood of success on the merits.[3]

---

**3.** The Court will parenthetically note that plaintiff has failed to make a prima facie showing that Drew Edmondson, in his official

capacity as Attorney General of the State of Oklahoma, is a proper defendant to this ac-

*Suffer Irreparable harm*

██ As to the second element, the plaintiff must establish a prima facie case showing that it will suffer irreparable harm if neither a temporary restraining order nor a preliminary injunction is issued. The plaintiff contends that minors will be subject to risky delays in obtaining necessary medical care and a risk to their health if the Court does not enjoin enforcement of the Act. Additionally, the plaintiff claims that enforcement of an unconstitutional provision is per se irreparable harm.

██ In that the Court finds that plaintiff has failed to make a prima facie showing that the Act is unconstitutional on its face, plaintiff has also failed to make a prima facie showing of per se irreparable harm. Plaintiff's other argument that minors will be subject to delays in obtaining medical care and potential risks to their health are arguments too speculative to support issuance of injunctive relief.[4] To constitute irreparable harm warranting the issuance of an injunction, the plaintiff must make a prima facie showing of an injury which is certain, great, actual and not theoretical. "Irreparable harm is not harm that is merely serious or substantial." *Heideman v. South Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir.2003). Moreover, in order for plaintiff to establish irreparable harm, the plaintiff must show that irreparable harm is being caused by the challenged provision in the Act, not from the stress and emotions associated with an unwanted pregnancy. The Fourth Circuit expressed this concern in *Manning v. Hunt:*

> tion. As a state official, the Attorney General is entitled to Eleventh Amendment immunity, unless under *Ex Parte Young* the plaintiff can show both that the Attorney General has some connection with the purported unconstitutional provision, and that he has threatened or is about to commence proceedings to enforce the unconstitutional provision. *See, Okpalobi v. Foster,* 244 F.3d 405 (5th Cir.2001). The

Especially in a facial challenge in which a court is asked to enjoin a statute with little insight into how the statute is actually being implemented and its actual effect on unemancipated minors, plaintiff must draw a correlation between the alleged injuries—which must be more than generalized problems associated with teen pregnancy—and the challenged provisions within the statutory scheme. The Court agrees that young pregnant minors have a need for emotional support as well as a confidential and expeditious bypass. But in no case have the appellants tied these needs to a harm directly caused by the Act.

119 F.3d at 265.

The Court finds that plaintiff has failed to make a prima facie showing of irreparable harm.

*Weighing the threatened injury*

██ As to the third element, the plaintiff must establish a prima facie case showing that the threatened injury to the plaintiff outweighs the harm caused to the defendants as a result of issuance of the injunction. Plaintiff contends that if the injunction is not issued, some of the minor patients will be deprived of their constitutional rights to an abortion and some may suffer medical harm, whereas the defendants will merely be delayed in enforcing the Act if it ultimately withstands judicial scrutiny. Thus, the plaintiff argues that the irreparable harm to it clearly outweighs any harm to the defendants.

> plaintiff has not alleged any connection between the lack of time limits on the judicial bypass provision and the enforcement power of the Attorney General.
>
> 4. Based on last year's statistics, the plaintiff admits that this provision may potentially affect only 17 of its minor patients within the next 12 months.

As stated above, the plaintiff has failed to make a prima facie showing that the Act is unconstitutional on its face. The Act does not infringe on the minor's constitutional right to an abortion nor does the Act deny expedited access to the courts to authorize a minor's abortion without one of her parents' notification.

The Court disagrees that no harm will be suffered by the defendants by granting injunctive relief. The defendants herein have a responsibility to enforce the laws of the State of Oklahoma which are enacted for the health, safety and welfare of its citizens. This responsibility is particularly acute as to our minor citizens. "In the case of abortions for minors, these interests take on added meaning when augmented by the state's interest in protecting children from their own lack of maturity and in ensuring that a minor without the maturity to choose to have an abortion does not do so when it is not in her best interest." *Manning*, 119 F.3d at 266 (citing *Bellotti II*, 443 U.S. at 634, 99 S.Ct. 3035). If an injunction were to issue, there would be no mechanism in place for a minor to obtain a judicial bypass. To the extent that the State has an interest in protecting a minor from a difficult family situation, Oklahoma has enacted the judicial bypass for minor women who desire to obtain an abortion without notification of one or both of her parents. The Court finds that plaintiff has failed to make a prima facie showing as to the third element for the issuance of an injunction.

*Public interest*

To satisfy the fourth criteria, plaintiff must establish a prima facie showing that issuance of an injunction is not adverse to the public interest. The plaintiff contends that the public interest is served in granting an injunction that prevents violations of constitutional rights because the public has no interest in enforcing an unconstitutional statute.

Stated again, the plaintiff has failed to make a prima facie showing that the Act is unconstitutional. Therefore, clearly the Act is in the public interest. The Act helps preserve the traditional notion of responsibility between parent and child, while also taking into account, through its judicial bypass, the very few exceptional cases to bypass parental notification in a confidential and expeditious manner. Accordingly, the Court finds that plaintiff has failed to make a prima facie showing as to the fourth element for issuance of injunctive relief.

**Conclusion**

The Court recognizes plaintiff's reliance on the holding in *Planned Parenthood of Southern Arizona v. Lawall*, 180 F.3d 1022 (9th Cir.1999), wherein the circuit court affirmed the permanent enjoinment of a statute which is similar to the statute before this Court. One distinguishing fact addressed in *Lawall*, was that the court noted that the 1996 statutory provision of an Arizona parental consent statute did not, unlike the 1989 version, contain a requirement that the Arizona Supreme Court promulgate appropriate rules for its implementation. *Id.* at 1031. Clearly, the Oklahoma Constitution provides that the rule making power for all state courts is vested in the Oklahoma Supreme Court. There is no requirement that it obtain directives from the Oklahoma legislature to exercise its inherent power.

■ Even in the absence of specific rules and procedures, this Court relies upon an assumption that state courts will not ignore the directive of the United State Supreme Court set forth in *Bellotti II*. "State judges are bound, just as federal judges are, to uphold the Constitution of the United States and to follow the opinions of the United States Supreme Court.

*See,* U.S. Const. Art. VI ("This Constitution, and the Laws of the United States...shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.')" *Manning,* 119 F.3d at 270. The citizens of Oklahoma necessarily rely on state judges to comply with state statutory provisions. The Act herein clearly sets forth expedition and confidentiality at every level of the judicial bypass process for the protection of the health, safety and welfare of every minor who seeks to utilize it.

**IT IS THEREFORE THE ORDER OF THE COURT** that plaintiff has failed to make a prima facie showing of the elements necessary for the issuance of a temporary restraining order and/or preliminary injunction, and thus, the Court denies the plaintiff's motion for issuance of an injunction.

### ORDER ON MOTION

Before the Court is plaintiff's motion for injunction pending appeal of the Order entered herein on May 27, 2005, denying the issuance of a temporary or preliminary injunction, or alternatively, for an injunction pending promulgation and adoption by the Oklahoma Supreme Court of rules setting definite time limits for the judicial bypass provision contained within Oklahoma's parental notification law, Section 11 through 15 of Okla. H.B. 1686, 50th Leg., 1st Reg. Sess. (2005), codified at Okla. Stat. tit. 63, §§ 1–740.1 to 1–740.5 ("the Act").[1]

The plaintiff contends that an injunction pending appeal should issue, because "the Act is unconstitutional under well-established standards for laws requiring parental involvement in a young woman's decision to obtain an abortion because it fails to establish a definite, specific time frame for determination of either petitions for a judicial bypass of the parental notification requirement or appeals from denial of judicial bypass petitions." This Court denied plaintiff's motion for either a temporary and/or preliminary injunction, finding that plaintiff had not met the strict standard to satisfy the four prerequisite elements for issuance of an injunction. The Court found *inter alia* that plaintiff did not make a showing of a substantial likelihood that it will eventually prevail on the merits, because the Act comports with the requirements of *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979)(*Bellotti II* ), by affording a cost-free, expeditious filing, and priority determination of the judicial bypass proceeding in any court of competent jurisdiction. Thus, the Act is not facially unconstitutional. The Court noted that the Oklahoma Constitution vests within the Oklahoma Supreme Court the power to establish rules and procedures for the implementation of any judicial process enacted by the Oklahoma legislature. Thus, it is the function of the Oklahoma Supreme Court to determine whether a definite and specific time frame should be established, or whether the leg-

---

1. In that plaintiff has filed a notice of appeal, the Court defers any further consideration on the argument raised by the defendant Drew Edmondson, in his official capacity as Attorney General of the State of Oklahoma, that plaintiff has failed to make a prima facie showing that he is a proper defendant to this action. As a state official, the Attorney General is entitled to Eleventh Amendment immunity, unless under *Ex Parte Young* the plaintiff can show both that the Attorney General has some connection with the purported unconstitutional provision, and that he has threatened or is about to commence proceedings to enforce the unconstitutional provision. *See, Okpalobi v. Foster,* 244 F.3d 405 (5th Cir.2001). The Court has previously noted that plaintiff has not established any such connection in its pleadings.

islative mandate that the judicial bypass proceeding have priority and that it be expeditious was intended to accommodate the urgency of each particular case. Accordingly, the Court did not adopt the plaintiff's position that the Act is defective, fatally flawed, or unconstitutional.

As further justification for seeking a "guaranteed" or an "assured" definite time frame, the plaintiff argues that minors seeking judicial authorization for abortions may potentially have to compete with numerous other cases which have also been granted priority by statute.[2] The Act accommodates this potential conflict by allowing the courts to resolve competing priority cases, as necessary in each case. For example, had the Act required that a minor's judicial bypass petition be determined within a definite time, such as 48 hours, a court might underestimate the urgency of the bypass request, delaying the hearing until the 48th hour. A simul-

taneously filed competing case with statutorily mandated priority may take precedence because of the absence of the 48–hour accommodation. However, two simultaneously filed competing petitions, each granted statutory priority and expedition, would necessarily be resolved by reassignment or transfer to different judicial officers, or by back-to-back hearings before the same judicial officer.[3] The Act complies with the expeditious and priority standard required by *Bellotti II*, and whether specific rules and procedures are required to "guarantee" the legislative mandate of expedition, is appropriately left to the determination of the Oklahoma Supreme Court as the overseer of all lower state courts in Oklahoma. Accordingly, the Court finds that plaintiff has failed to establish that it is likely to succeed on the merits of its appeal.

The Court finds no merit to plaintiff's argument that this Court's reliance on

**2.** In its brief, the plaintiff lists eleven Oklahoma statutory provisions which require priority or accelerated judicial determination. Each of these statutory provisions contains functionally the same legislative requirement of "priority," "precedence" or "preference" as mandated in the Act here in question. None of these statutory provisions set forth a definite and specific time frame for judicial determination. Statutes containing such priority provisions have been enacted in Oklahoma since statehood. *See*, 1907 Okla. Sess. Laws p. 444, Sec 6, art.1, c. 44, *cited in In re Initiative Petition No. 3*, 26 Okla. 487, 109 P. 732 (1910). The earliest priority statute listed by plaintiff, Okla. Stat. tit. 19, § 896, was enacted in 1949. *See*, 1949 Okla. Sess. Laws p. 186, Sec. 11. The fact that Oklahoma courts have a long history of administering numerous statutes which require emergency consideration is evidence that the courts are capable of accelerating and managing priority cases on their dockets as mandated by the Oklahoma legislature.

**3.** Coincidently, and as a case in point, on May 20, 2005, the case of *Eddington v. Catoosa Public Schools*, Case No. 05–CV–279–HDC was filed and randomly assigned to the undersigned judge at 3:53 p.m. requesting the issu-

ance of a temporary restraining order to enjoin an event which was to occur at 8:00 p.m. that same evening. At 4:31 p.m. on that same day, the plaintiff herein filed the instant action, Case No. 05–CV–280–HDC requesting the issuance of a temporary restraining order, which was also randomly assigned to the undersigned judge. Not being in chambers on that date and unavailable to accommodate the urgency to conduct an immediate hearing, this judge effectuated a transfer of 05–CV–279–HDC to Chief Judge Claire V. Eagan, who held a full preliminary hearing on the pending TRO and issued an opinion at 6:28 p.m. on May 20th. To accommodate the urgency of 05–CV–280–HDC, the Court Clerk returned to the courthouse on Saturday, May 21, 2005, and transmitted by facsimile all pleadings filed in 05–CV–280–HDC for this judge to review and prepare over the weekend for the hearing conducted on May 24, 2005. This activity is some evidence of expeditious and priority consideration by the court system 24 hours a day, 7 days a week, to accommodate and determine time sensitive competing statutory priority cases, consistent with the particular urgency of each case.

*Manning v. Hunt,* 119 F.3d 254 (4th Cir. 1997) is misplaced, because of the Fourth Circuit's adoption in *Manning* of the "no set of circumstances" standard of review to facial challenges of abortion regulations enunciated in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Under *Salerno,* the challenger is required to show that under no set of circumstances can the Act be applied in a manner which is not an undue burden on an unemancipated pregnant minor's right to obtain an abortion. *See, Manning,* 119 F.3d at 269. Plaintiff contends the standard of review adopted by the Tenth Circuit and enumerated in *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) should apply. Under *Casey,* an abortion regulation is facially invalid if in a large fraction of cases in which it is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion. *See, Casey,* 505 U.S. at 895, 112 S.Ct. 2791. The Court finds no merit to plaintiff's argument because under either standard of review for a facial challenge, the provision in the Act at issue clearly comports with the requirements set forth in *Bellotti II.* Moreover, this Court did not rely on the "no set of circumstances" standard of review in determining plaintiff's motion for injunctive relief. The Court cited *Manning* as an example of a state in which the state supreme court elected to promulgate procedural rules for the implementation of the judicial bypass legislation, and this Court's recognition of that judicial function.

Accordingly, the Court finds that plaintiff has failed to satisfy the four prerequisite elements for issuance of an injunction pending appeal and thus, plaintiff's motion (Dkt. # 32) is DENIED.