**PLANNED PARENTHOOD OF SOUTHERN ARIZONA, and its corporate chapter, Arizona Women's Clinic, Inc.; Planned Parenthood of Central and Northern Arizona, Inc.; Frederic N. Stimmell, MD, individually and on behalf of his minor patients, Plaintiffs–Appellees,**

v.

**Barbara LAWALL, as County Attorney for the County of Pima, and as representative for all other prosecuting attorneys similarly situated throughout the State of Arizona, including without limitation City Attorneys; Cochise County; City of Williams, Gary Verberg as City Attorney of City of Williams; Gila County Attorney, Defendants–Appellants,**

**and**

**Tim Delaney,\* Acting Arizona Attorney General, Defendant–Intervenor–Appellant.**

**No. 98–15862.**

United States Court of Appeals, Ninth Circuit.

Filed Oct. 22, 1999

Before: CHOY and TASHIMA, Circuit Judges, and RESTANI, Court of International Trade Judge.\*\*

---

\* Tim Delaney, Acting Arizona Attorney General, has been substituted in the place and stead of Janet Napolitano, Arizona Attorney General, pursuant to Fed. R.App. P. 43(b) and Ariz. Rev.Stat. §§ 38–461 and 38–462. Attorney General Napolitano has recused herself from any decisionmaking or involvement in this action.

\*\* The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

ORDER

The opinion filed June 9, 1999, is amended as follows:

On slip opinion page 6025 (180 F.3d 1022, 1029), footnote 8 is amended to read as follows:

8. The evidence in the district court was that during the period from August 1, 1981, to March 1, 1986, 3,573 judicial bypass petitions were filed in the Minnesota courts. The majority of these petitions were filed in three metropolitan counties, where courts scheduled bypass hearings on a regular basis and had procedures in place for hearing emergency petitions. The courts in non-metropolitan counties were acquainted with the statute and, for the most part, applied it conscientiously. Typically, a minor waited only two or three days to schedule a petition hearing. *See Hodgson v. Minnesota,* 497 U.S. 417, 440–42, 110 S.Ct. 2926, 111 L.Ed.2d 344.

On slip opinion page 6025 (180 F.3d at 1029, left-hand column), at the end of the first complete paragraph, add a new sentence: "The Court, however, has never considered a facial challenge to a judicial bypass provision without specific time limits and containing only a general directive to the courts to proceed expeditiously."

On slip opinion page 6026 (180 F.3d at 1029, right-hand column), at the end of the carryover paragraph (ending with *"Hodson* has little bearing on the status of § 36–2152(D)."), add a new footnote 9, as follows:

9. *Hodgson* also was an *as applied* challenge to Minnesota's judicial bypass statute. *See Hodgson v. Minnesota,* 648 F.Supp. 756, 770 (D.Minn.1986) ("Second, plaintiffs contend that even with the judicial bypass procedure of sub. 6 incorporated as subd. 2(c) by virtue of this court's temporary restraining order ..., § 144.343(2)-(7), *as applied in*

*Minnesota,* unduly burdens the fourteenth amendment due process rights of pregnant minors.") (emphasis added). *See also id.* at 766 ("The court heard testimony of judges who collectively have adjudicated over 90 percent of the parental notification petitions filed since August 1, 1981."); *Hodgson,* 497 U.S. at 430, 110 S.Ct. 2926 (the as-applied challenge was decided only after a five-week trial). As stated at the beginning of our opinion, we deal here with a challenge to the facial validity of the Arizona statute.

Renumber the remaining footnotes accordingly.

With the foregoing amendments the panel has voted to deny the petition for rehearing. A judge of the court called for rehearing en banc, but the call failed to receive a majority of the votes cast by the nonrecused active judges of the court. The petition for rehearing and the petition for rehearing en banc are denied.

O'SCANNLAIN, Circuit Judge, with whom T.G. NELSON and KLEINFELD, Circuit Judges, join, dissenting:

The court's refusal to reconsider this case en banc allows a federal court to invalidate, for the second time, a duly enacted Arizona statute regulating abortion.[1] This time around, the court flouts Supreme Court precedent. I respectfully dissent.

It is difficult to imagine a decision more appropriate for en banc reconsideration than this one. First, the case is one of the utmost gravity. Federal courts must act with the greatest circumspection when we override a state's democratic processes to strike down its enactments as unconstitutional. We are legitimately charged with interpreting and enforcing the supreme law of the land-even at the cost of frustrating the will of electoral majorities-but it has never been doubted that on such occa-

1. A federal district court permanently enjoined the enforcement of a prior version of this statute in 1992. *See Planned Parenthood v. Neely,* 804 F.Supp. 1210 (D.Ariz.1992). Four years later, the Arizona legislature en-

acted the amended version that the panel invalidated in this case. *See* Ariz.Rev.Stat. § 36–2152 (1996); *Planned Parenthood v. Neely,* 130 F.3d 400, 402 (9th Cir.1997).

sions we must do so with heightened deliberation. Second, the panel's opinion all but ignores a Supreme Court precedent that compels the conclusion that Arizona's statute is, in fact, perfectly constitutional. Third, the panel's opinion introduces, without much deliberation at all, a novel and untenable standard in this circuit for facial attacks upon statutes regulating abortion. This new standard defies Supreme Court precedent and turns the law of facial challenges to statutes on its head. If consistently applied, this standard will render almost any statute regulating abortion impossible to defend against facial attack.

## I

Under Arizona's judicial bypass procedure, a minor seeking an abortion who does not want to tell her parents or cannot obtain their consent may obtain permission from a judge. The judicial bypass procedure provides that a hearing to determine whether a minor may obtain an abortion "shall have precedence over other pending matters," A.R.S. § 36–2152(D), and that "[t]he court shall reach the decision *promptly* and *without delay* to serve the best interest of a pregnant minor," *id.* (emphases added). A minor may make an "expedited" appeal from a judge's denial of permission and has access to the courts for the purpose of making this appeal "twenty-four hours a day, seven days a week." *Id.* § 36–2152(E).

In *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (plurality opinion) ("*Bellotti II*"), the Supreme Court indicated that a state must provide a judicial bypass procedure in parental-consent statutes that "*assure[s]* that a resolution of the issue, and any appeals that may follow, will be completed with anonymity

and *sufficient expedition to provide an effective opportunity for an abortion to be obtained.*" *Id.* at 644, 99 S.Ct. 3035 (emphases added). In applying the requirements of *Bellotti II* in this case, the panel held that the Arizona statute's lack of specific time-limits at the trial court level "hinders any effective opportunity for obtaining an abortion, because the trial court could delay the bypass procedure for a sufficient period to render it practically unavailable." 180 F.3d at 1028.

This holding flies in the face of the Supreme Court's decision in *Hodgson v. Minnesota,* 497 U.S. 417, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (plurality opinion). In *Hodgson,* five Justices (with Justice O'Connor writing separately) *upheld* the judicial bypass provision of a Minnesota parental-notice statute that imposed *no* specific time-limits on the courts' disposition of bypass petitions. *Hodgson* must control the case before us, for the relevant language of Minnesota's bypass provision was *essentially identical* to that of the Arizona statute invalidated by the panel in this case. *Compare* Ariz.Rev.Stat. § 36–2152(D) (1996) ("The court shall reach the decision *promptly* and *without delay* . . . ." (emphases added)) *with* Minn.Stat. § 144.343(6)(iii) (1980 & Supp.1981) ("Proceedings in the court . . . shall be given such precedence over other pending matters so that the court may reach a decision *promptly* and *without delay* . . . ." (emphases added)).

The panel held that *Hodgson* was distinguishable because there was evidence that Minnesota's courts processed bypass applications in a timely fashion, whereas in the instant case there is no evidence that Arizona processes judicial bypass applications in a manner that is timely or otherwise.[2]

---

2. Although Minnesota's statute required parental notification rather than parental consent (which Arizona's statute requires), the panel correctly declined to rely on that distinction. The Supreme Court has in the past acknowledged a possible difference between constitutional requirements for the judicial bypass provisions of parental-consent statutes and of parental-notification statutes, but that distinction was explicitly *not* dispositive in

the Court's approval of the Minnesota statute's judicial bypass provision. Instead, the Court approved the Minnesota provision because it satisfied the arguably stricter standards articulated in *Bellotti II* for judicial bypass provisions in parental-*consent* statutes and therefore *a fortiori* satisfied constitutional requirements for judicial bypass provisions in parental-*notice* statutes. *See Hodgson,* 497

180 F.3d at 1028. The panel's attempt to distinguish *Hodgson* is profoundly unpersuasive and represents a novel and utterly untenable deviation from the settled law of facial challenges.

First, none of the Justices who voted in *Hodgson* to uphold the judicial bypass provision without time-limits relied on-or even noted-any evidence that Minnesota processed judicial bypass petitions in a timely fashion. The Justices simply concluded as a matter of course that the statute passed constitutional muster both on its face and as applied. The citation to the evidence of timely processing of petitions in *Hodgson* was made by Justice Stevens, *see Hodgson* 497 U.S. at 440–42, 110 S.Ct. 2926 who voted (unlike the *Hodgson* majority) to *invalidate* Minnesota's judicial bypass provision. It is simply disingenuous for the panel to have declared as central to the *Hodgson* Court's judgment facts that were adduced solely by a Justice who dissented from that judgment. The plain meaning of the *majority's* opinions in *Hodgson* compels the conclusion that the Supreme Court's decision squarely controls the case before us.

Even more troubling is the panel's suggestion that, in order to defend against a facial attack upon a statute regulating abortion, the *State* now bears the burden of showing that there is no significant risk of the statute's unconstitutional applica-

tion.[3] This cannot be correct. The panel's apparent reallocation of the evidentiary burden on a facial challenge is a fundamental deviation from established constitutional jurisprudence. If the State bore the burden, as the panel mistakenly believed was implied in *Hodgson,* a facial challenge to a state statute would not be "the most difficult challenge to mount successfully," *Rust v. Sullivan,* 500 U.S. 173, 183, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991), but the easiest. Indeed, a facial challenge to any newly effective statute regulating abortion would be, under the panel's ruling, absolutely indefeasible. Before it has enforced its new statute, the State would have no opportunity to show that its efforts to do so would be consistently constitutional. The result is tantamount to holding that every facial challenge to a reasonably drafted statute regulating abortion is a surefire winner-an obviously extravagent contention, but perhaps one intended by the panel.

Put another way, the panel's attempt to distinguish *Hodgson* by relying on the fact that Minnesota's statute was constitutionally applied suggests that a statute's constitutionality as applied is unrelated to the statute's facial validity. Au contraire! A statute that is constitutional as applied is perforce constitutional on its face. To hold otherwise is to imply that the State of Arizona might well have been able to legitimate a facially unconstitutional statute-simply by enforcing it for a while.[4] Mere-

U.S. at 497–98, 110 S.Ct. 2926 (Kennedy, J., dissenting and concurring) ("The simple fact is that our decision in *Bellotti II* stands for the proposition that a two-parent consent law is constitutional if it provides for a sufficient judicial bypass alternative, and it requires us to sustain the statute before us here."); *id.* at 499–500, 110 S.Ct. 2926 (Kennedy, J., concurring and dissenting) ("As *Bellotti II* dealt with the far more demanding requirements of two-parent consent, and approved of such a requirement when coupled with a judicial bypass alternative, I must conclude that *these same principles* validate a two-parent notice requirement when coupled with a judicial bypass alternative.") (emphasis added); *see also id.* at 461, 110 S.Ct. 2926 (O'Connor, J., concurring) (citing only cases deciding the constitutionality of judicial bypass provisions of parental-consent statutes before concluding

that Minnesota's judicial bypass provision "passes constitutional muster").

3. The panel plainly implied that the burden was the State's when the panel determined that Arizona's statute had to fall in light of a dearth of evidence supporting consistently constitutional applications-for the plaintiffs in this case certainly offered no evidence whatsoever that Arizona's new statute had been *un* constitutionally applied (much less that it had been or would be unconstitutionally applied in a significant number of cases).

4. In the panel's view, this is exactly what must have happened (with the Supreme Court's approval) in Minnesota. The federal district court declined to grant a preliminary injunction barring the enforcement of the challenged Minnesota statute. *See Hodgson,*

ly to state so ludicrous a proposition suffices to refute it.

## II

The panel also deviated from the law of facial challenges when it declared that the Supreme Court's decision in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), no longer sets the standard for facial challenges to statutes regulating abortion and held instead that the appropriate standard was adumbrated in *Planned Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). *Salerno* and pre-*Casey* cases like *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 514, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990), explicitly held that a facial challenge to a statute will fail if the statute has *any* constitutional application or, at the very least, if the challenge relies on supposition of "a worst-case [scenario] that may never occur," *id. Casey*, on the other hand, implied that a factual showing of unconstitutional application in "a large fraction of cases" in which the law applies is sufficient to render the law facially unconstitutional, even if the law has constitutional applications. *Casey*, 505 U.S. at 895, 112 S.Ct. 2791. The mysterious and unexplained deviation from the Court's rule on facial challenges in the plurality decision in *Casey*, however, never purported to overrule *Salerno* or *Akron*. Moreover, no decision of the Supreme Court has ever abrogated the explicit *Salerno* standard. Because the general standard for facial challenges to abortion regulations applicable under *Salerno* and *Akron* has not been authoritatively abandoned, we are simply bound to follow it.

In anticipatorily rejecting the standard laid out in *Salerno* and *Akron*, the panel forgot this court's role in the scheme of things. We apply, where applicable, the precedents of the Supreme Court unless it has overturned them. Clearly, we are not authorized to disregard the high court's decisions just because we conclude, on the basis of an unofficial tally of probable votes, that a majority of the Justices will decline to overrule us. This is, nevertheless, exactly what the panel did when it justified its application of *Casey*'s standard with a survey of the views on the relationship between *Casey* and *Salerno* that individual Justices have expressed in non-authoritative writings. *See* 180 F.3d at 1025 ("Although the Court has yet to address the conflict between *Casey* and *Salerno* in a majority decision, members of the Court have offered their opinions in memoranda denying petitions for certiorari and applications for stays and injunctions pending appeals.").[5] Even when decisions of the Supreme Court suggest, but do not state, that one of its prior decisions has been vitiated, it is not our place to pronounce that decision's demise. The Court has repeatedly admonished "other courts" against "conclud[ing] that its recent cases have, by implication, overruled an earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); *see also State Oil Co. v. Khan*, 522 U.S. 3, 118 S.Ct. 275, 284, 139 L.Ed.2d 199 (1997) ("The Court of Appeals was correct in applying th[e] principle [of stare decisis] despite disagreement with *Albrecht*, for it is this Court's prerogative alone to overrule one of its precedents."); *Quijas v. Shearson/American Express*, 490

648 F.Supp. at 760. The district court's decision against granting an injunction was presumably wrong, from the panel's perspective, for Minnesota's statute was practically identical to Arizona's, the preliminary injunction against which the panel unanimously affirmed. The panel thus seems to have believed that, in light of the Minnesota statute's consistently constitutional enforcement during the state's reprieve (enjoyed *purely as a result* of the federal district court's *serendipi-*

*tous bungling* of constitutional law) the statute was-what luck!-no longer facially invalid by the time the case was tried.

**5.** The panel admitted that its survey was non-authoritative, *see* 180 F.3d at 1025 n. 3, but the only other authorities for abandoning *Salerno*'s explicit standard that the panel adduced were the decisions of lower courts, which, it hardly need be said, are not sufficient authority.

U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) ("If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions."). The panel erred egregiously in declaring-when the Supreme Court has not-that *Salerno* and *Akron* are overruled and that *Casey* supplies the standard for facial challenges to statutes regulating abortion. The panel should have followed the *Salerno* standard, which directly controls.

It is undisputed that, under *Salerno* and *Akron,* this court is required by Supreme Court precedent to reject a facial attack on a statute regulating abortion unless the party challenging the statute can "show that 'no set of circumstances exists under which the Act would be valid.'" *Akron,* 497 U.S. at 514, 110 S.Ct. 2972 (quoting *Webster v. Reproductive Health Servs.,* 492 U.S. 490, 524, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) (O'Connor, J., concurring)). Because the plaintiff in this case could make no such showing, the plaintiff's attack must be rejected.

Furthermore, even if *Casey* logically, albeit sub silentio, overruled the *Salerno* standard applied in *Akron,* it obviously did so only to the extent of the burden actually borne by the plaintiffs in *Casey.* Hence, under *Casey,* the plaintiffs in this case would still have to establish that the Arizona statute is so overbroad that, "in a *large fraction* of the cases in which [the challenged regulation] is relevant, it will operate as a substantial [and otherwise impermissible] obstacle to a woman's choice to undergo an abortion." *Casey,* 505 U.S. at 895, 112 S.Ct. 2791 (emphasis added). The plaintiffs in this case have not shown that Arizona's trial courts will impermissibly drag out their consideration of a "large fraction" of minors' petitions for judicial bypasses. There is simply no basis in the record for such a presumption, and it is highly inappropriate for a federal court to be indulging in such an arrogant surmise. Even under *Casey*'s lower standard for facial challenges, the plaintiffs in this case did not meet their burden, and the panel grievously erred in invalidating Arizona's statute.

## III

The panel's opinion in this case was a lawless assault on a legitimate exercise in democratic government by the people of Arizona. It should have been reheard en banc and corrected; because the court declines to do so, I must respectfully dissent.