**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 25, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NOVA HEALTH SYSTEMS, d/b/a
REPRODUCTIVE SERVICES, on
behalf of itself, its staff and its
patients,

      Plaintiff - Appellant,

v.

W. A. DREW EDMONDSON, in his
official capacity as Attorney General
of the State of Oklahoma; and TIM
HARRIS, in his official capacity as
Tulsa County District Attorney, and
their employees, agents and successors
in office,

      Defendants - Appellees.

No. 05-5085

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 05-CV-0280-HDC)**

---

Sanford M. Cohen, Center for Reproductive Rights, New York, NY (Galen
Sherwin, Center for Reproductive Rights, New York, NY, M.M. Hardwick,
Hardwick Law Office, Tulsa, OK, with him on the briefs), for Plaintiff -
Appellant.

Teresa S. Collett, Special Attorney General for the State of Oklahoma,
Minneapolis, MN (David T. Iski and James D. Dunn, Assistant District Attorneys,

Tulsa County District Attorney's Office, Tulsa, OK, with her on the brief), for Defendants - Appellees.

Before **MURPHY**, **EBEL** and **HARTZ**, Circuit Judges.

**EBEL**, Circuit Judge.

Plaintiff-Appellant Nova Health Systems ("Nova") challenges the district court's denial of its motion to enjoin a recently-enacted state statute requiring parental notification before a minor may receive an abortion. Specifically, Nova argues that the statute fails to ensure that a minor's petition for judicial approval of an abortion without notification to her parents will be decided with "sufficient expedition." As the text of the statute plainly requires prompt and expedited decisions, and as Nova points to no evidence that the state courts will not meet these mandates, we hold that Nova has not shown a likelihood of success on the merits of its action. We therefore AFFIRM the decision of the district court.

## BACKGROUND

Oklahoma recently enacted H.B. 1686 (the "Oklahoma Act" or "Act"), a statute that, *inter alia*, requires parental notification before an abortion is performed on an "unemancipated minor."[1]  H.B. 1686, 50th Leg., 1st Reg. Sess.

---

[1] An "unemancipated minor" is "any person under eighteen (18) years of age who is not or has not been married or who is under the care, custody and
(continued...)

- 2 -

(Okla. 2005) (codified at Okla. Stat. tit. 63, §§ 1-740.1–1-740.5). Specifically, the Oklahoma Act requires a physician to notify a parent or legal guardian at least 48 hours before performing the abortion. Okla. Stat. tit. 63, § 1-740.2(A). The notice must be personally delivered or sent by certified mail to the parent or guardian's "usual place of abode." Id. § 1-740.2(A)(1)-(2). Alternatively, the parent or guardian may certify in a notarized statement that he or she has been notified. Id. § 1-740.2(A)(3).[2]

There are two ways to bypass this notice requirement. First, notice can be waived in a case of medical emergency or where the abortion is necessary to prevent the death of the minor. Id. § 1-740.2(B)(1)-(2). Second, a court may authorize the abortion be performed without notice. Id. § 1-740.3. It is this second bypass procedure—"judicial bypass"—that is the subject of the present appeal.

The Oklahoma Act provides, in relevant part, that

---

[1](...continued)
control of the person's parent or parents, guardian or juvenile court of competent jurisdiction." Okla. Stat. tit. 63, § 1-740.1(3).

[2] A person who performs an abortion in "knowing and reckless violation of" the notice requirement commits a criminal misdemeanor and is subject to a civil action for actual and punitive damages "by . . . person[s] wrongfully denied notification." Id. § 1-740.4. Nova claims that staff who assist in an abortion procedure and the entity (such as Nova) which arranges for the procedure face accomplice liability under Oklahoma law. See Okla. Stat. tit. 21, § 172.

- 3 -

> [i]f a pregnant unemancipated minor elects not to allow the notification of her parent, any judge of a court of competent jurisdiction shall, upon petition or motion, and after an appropriate hearing, authorize a physician to perform the abortion if the judge determines that the pregnant unemancipated minor is mature and capable of giving informed consent to the proposed abortion. If the judge determines that the pregnant unemancipated minor is not mature, or if the pregnant unemancipated minor does not claim to be mature, the judge shall determine whether the performance of an abortion upon her without notification of her parent would be in her best interest and shall authorize a physician to perform the abortion without notification if the judge concludes that the pregnant unemancipated minor's best interests would be served thereby.

Id. § 1-740.3(A). The Act does not set forth a definite time frame within which the decision on the bypass petition must be made, providing instead that

> [p]roceedings in the court . . . shall be confidential and shall be given precedence over other pending matters so that the court may reach a decision promptly and without delay so as to serve the best interests of the pregnant unemancipated minor. . . .
>
> Access to the trial court for the purpose of a petition or motion . . . shall be afforded a pregnant unemancipated minor twenty-four (24) hours a day, seven (7) days a week.

Id. § 1-740.3(C),(D).

Similarly, although the Oklahoma Act does not establish a concrete time frame for the appellate court to consider the minor's appeal in the event she is denied relief in the trial court, the statute does provide that

> [a]n expedited confidential appeal shall be available to any pregnant unemancipated minor for whom the court denies an order authorizing an abortion without notification. An order authorizing an abortion without notification shall not be subject to appeal. No filing fees shall be required of any pregnant unemancipated minor at either the trial or

- 4 -

the appellate level. . . . [A]ccess to the appellate courts for the purpose of making an appeal from the denial of same, shall be afforded a pregnant unemancipated minor twenty-four (24) hours a day, seven (7) days a week.

Id. § 1-740.3(D).

On May 20, 2005, the day the Oklahoma Act took effect, Nova filed suit to enjoin its enforcement. At the same time, it filed a motion for a preliminary injunction with a request for a temporary restraining order, arguing that the judicial bypass provisions were unconstitutional because they failed to specify a time frame within which minors' bypass petitions must be decided. Nova argues that the lack of time limits will increase the medical risks associated with abortion procedures. Specifically, Nova claims that the "potentially unlimited" delay a minor faces in receiving judicial approval of her request to proceed without notification could delay her abortion into the second trimester, in which case she would have to undergo a different procedure. The delay could also result in the pregnancy progressing past the point which Nova provides abortions,[3] meaning that the minor would have to travel "great distances" to receive her abortion, further increasing the medical risks of the procedure.[4]

---

[3] Nova provides abortions through the 17th week of pregnancy.

[4] Nova currently refers women who are past the gestational limit at which Nova will perform an abortion to Little Rock, Arkansas; Wichita, Kansas; or Springfield, Missouri.

After a hearing, the district court denied Nova's motion for a preliminary injunction, finding that Nova had failed to demonstrate a need for emergency relief. Nova timely appealed.

## DISCUSSION

### I. Standard of Review

"'[A] preliminary injunction is an extraordinary remedy, [and thus] the right to relief must be clear and unequivocal.'" Schrier v. Univ. of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991)).[5] In order for a party to be entitled to a preliminary injunction, that party must show

> "(1) he or she will suffer irreparable injury unless the injunction issues;
> (2) the threatened injury outweighs whatever damage the proposed

---

[5] In O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973 (10th Cir. 2004) (en banc), we held that certain "disfavored preliminary injunctions" require a movant to "satisfy a heightened burden." Id. at 975. One such "disfavored" injunction is an injunction seeking to "alter the status quo," id., generally thought of as "'the last peaceable uncontested status' existing between the parties before the dispute developed," 11A Charles A. Wright, et al., Federal Practice & Procedure § 2948.

The parties do not contend that Nova's attempt to enjoin this newly enacted statute should be subjected to this heightened standard. We therefore express no opinion on the question of whether such an injunction should be thought of as "altering" or "preserving" the status quo. In any event, the result of our decision would be the same under either the normal or heightened standard.

injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits."

Id. at 1258 (quoting Heideman v. S. Salt Lake City, 348 F.3d 1182, 1188 (10th Cir. 2003)) (alterations omitted).[6]

We review the district court's denial of a preliminary injunction for an abuse of discretion. Schrier, 427 F.3d at 1258. "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." Davis

---

[6] Nova correctly points out that we have "adopted the Second Circuit's liberal definition of the 'probability of success' requirement." Heideman, 348 F.3d at 1189 (quotations omitted). Generally, "where the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success requirement' is somewhat relaxed" and "the movant need only show questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." Id. (quotations, alterations, emphasis omitted). However, we have also adopted the Second Circuit's qualification on this standard that "'where a preliminary injunction seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the less rigorous fair-ground-for-litigation standard should not be applied.'" Id. (quoting Sweeney v. Bane, 996 F.2d 1384, 1388 (2d Cir. 1993)) (alterations omitted). Thus where, as here, the plaintiff seeks to enjoin the enforcement of a statute, a showing that the questions are "fair ground for litigation" is not enough; the plaintiff must meet the traditional "substantial likelihood of success" standard. See Statharos v. New York City Taxi and Limousine Comm'n, 198 F.3d 317, 321-22 (2d Cir. 1999) (refusing to apply "fair ground for litigation" standard to request to enjoin city agency from enforcing regulation promulgated pursuant to city charter); Union Carbide Agric. Prods. Co. v. Costle, 632 F.2d 1014, 1018 (2d Cir. 1980) ("When Congress authorizes or mandates governmental action that is in the public interest, more than a 'fair ground for litigation' must be shown before the action will be stopped in its tracks by court order.").

v. Mineta, 302 F.3d 1104, 1111 (10th Cir. 2002) (citations omitted).  Although either an error of law or an error of fact may constitute an abuse of discretion, we review the district court's findings in these two areas under different standards; "[w]e examine the district court's underlying factual findings for clear error, and its legal determinations *de novo*."  Id.

## II.  Analysis

The district court found that Nova failed to show any of the four elements necessary for a preliminary injunction to issue.  We agree with the district court that Nova has failed to show a substantial likelihood of success on the merits, and thus we affirm the district court's order on that ground without reaching the other three factors.  See Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1263 (10th Cir. 2005) (affirming district court's denial of preliminary injunction because plaintiffs failed to demonstrate likelihood of success on the merits).

In Bellotti v. Baird, 443 U.S. 622 (1979), the Supreme Court considered a statute that required the consent of both parents before an unmarried minor could obtain an abortion.  Id. at 625.  In passing on the constitutionality of the statute, the Court explained that the minor must be provided an alternative judicial procedure whereby authorization could be obtained, and that this proceeding "must assure that a resolution of the issue, and any appeals that may follow, will

be completed with anonymity and *sufficient expedition* to provide an effective opportunity for an abortion to be obtained." Id. at 643-44 (emphasis added).[7]

As a threshold matter, Appellees argue that Bellotti involved a parental *consent* statute and that it is not clear that Bellotti's expeditious bypass requirement applies to a statute like the one at issue here, which only requires parental *notification*. The Supreme Court has not specifically resolved this question, see Akron Ctr. for Reprod. Health, 497 U.S. at 510, and its decisions do not suggest a clear answer, compare Planned Parenthood of S.E. Pa. v. Casey, 505 U.S. 833, 897 (1992) (explaining that a *spousal* notice requirement "will often be tantamount to the [spousal consent requirement] found unconstitutional in [Planned Parenthood of Cent. Mo. v.]Danforth[, 428 U.S. 52, 69 (1976)]" because "a spousal notice requirement enables the husband to wield an effective veto over his wife's decision") with Hodgson v. Minnesota, 497 U.S. 417, 445 (opinion of Stevens, J.) ("Although the Court has held that parents may not exercise an absolute, and possibly arbitrary, veto over [a minor's decision to have an

_____

[7] These principles were laid out by a four-justice plurality. However, in subsequent opinions, court majorities have invoked the Bellotti criteria, see Lambert v. Wicklund, 520 U.S. 292, 295 (1997) (per curiam); Ohio v. Akron Ctr. for Reprod. Health, 497 U.S. 502, 513 (1990); and courts of appeals have held the criteria to be controlling, see, e.g., Manning v. Hunt, 119 F.3d 254, 262-63 (4th Cir. 1997).

abortion], it has never challenged a State's reasonable judgment that the decision should be made after notification to and consultation with a parent.").

Even so, as Nova points out, several courts of appeals have applied Bellotti's expeditious bypass requirement in the context of a parental notice statute. Planned Parenthood, Sioux Falls Clinic v. Miller, 63 F.3d 1452, 1460 (8th Cir. 1995) ("[P]arental-notice provisions, like parental-consent provisions, are unconstitutional without a Bellotti-type bypass."); Ind. Planned Parenthood Affiliates Ass'n v. Pearson, 716 F.2d 1127, 1132 (7th Cir. 1983) ("Because parental involvement brought about by either consent or notification statutes may result in similar efforts by parents to block the abortion, we will apply the Supreme Court's analysis with respect to consent bypass procedures in our consideration of the constitutional sufficiency of Indiana's notification bypass procedures.").

We need not resolve this question today. Because we conclude that the Oklahoma Act meets Belloti's expeditious bypass requirement, we assume without deciding that the requirement would apply to parental notification statutes. See Akron Ctr. for Reprod. Health, 497 U.S. at 510 (assuming, without deciding, that a notification statute must contain Bellotti-type bypass procedures

"because, whether or not the Fourteenth Amendment requires notice statutes to contain bypass procedures, [the statute in question] meets the requirements").[8]

We now turn to the heart of the present appeal—whether Bellotti's expeditious bypass requirement requires a concrete, definite time frame in which judicial action must be taken. Nova's argument that it does rests on the premise that "[a]lthough time is always of the essence where abortion decisions are concerned, expedition is especially important to the judicial bypass process" because the longer a minor has to wait to obtain an abortion, the more expensive—and, more importantly, less safe—the procedure becomes. This is certainly correct. However, whether or not time is of the essence misses the point; the question is whether, without a specified time frame, the Oklahoma Act assures that the judicial bypass process will be completed with "sufficient expedition." Bellotti, 443 U.S. at 644. Nova has not shown a "substantial

---

[8] After oral argument, Nova filed a Rule 28(j) letter informing this court that Oklahoma has amended the Act to require that a minor not only give notice, but also receive the written, informed consent of at least one parent, before obtaining an abortion. See S.B. 1742, 50th Leg., 2nd Reg. Sess. §§ 18-20 (Okla. 2006). Nova suggests that this amendment moots Appellees' contention that a notice statute need not include an expeditious bypass procedure, as Oklahoma now has a consent statute. We need not decide whether the amendment, which was not in the statute as challenged by Nova below, is properly before us. Because our disposition of this case does not depend on whether the statute is merely a notice statute or also requires consent, and because we do not dispositively address whether a notice statute must meet Bellotti's requirements, we see no reason to alter our analysis in light of this change.

likelihood" that a statute which requires bypass proceedings be "given precedence over other pending matters so that the court may reach a decision promptly and without delay so as to serve the best interests of the pregnant unemancipated minor" and provides for "[a]n expedited confidential appeal" fails, on its face, to satisfy Bellotti.[9]

Two points are critical to our decision. First is the posture of this appeal. Nova is challenging the Oklahoma Act on its face and has presented no evidence that there is, has been, or will be any impermissible delay as to bypass petitions. Nova argues that "[b]ecause the judicial bypass procedure does not contain any deadlines by which the court must rule, . . . young women face potentially unlimited delays in obtaining their abortions." Were this true, we would have serious concerns about the constitutionality of the bypass procedures. But Nova

---

[9] Nova suggests that the Oklahoma Act's language that bypass petitions take precedence so that courts "may" reach a prompt decision fails to assure expeditiousness, as required by Bellotti. However, "may" can mean, among other things, both to "have permission to" and to "express[] purpose or expectation . . . ." Webster's Third New Int'l Dictionary 1396 (1986). Thus, the Oklahoma Act could mean either that courts have *permission* to issue prompt decisions or that they are *expected* to issue prompt decisions. However, "'[w]here fairly possible, courts should construe a statute to avoid a danger of unconstitutionality.'" Akron Ctr. for Reprod. Health, 497 U.S. at 514 (quoting Planned Parenthood Ass'n of Kan. City v. Ashcroft, 462 U.S. 476, 493 (1983) (opinion of Powell, J.)). If the statute merely permitted courts to issue prompt decisions, it would certainly run the risk of offending Bellotti's requirement of *assuring* sufficient expedition. 443 U.S. at 644. We therefore construe "may" to mean that Oklahoma courts are expected to issue prompt decisions on bypass petitions.

- 12 -

points to no evidence to support this scenario. On the record before us, there is nothing to suggest that courts will act with anything other than "prompt[ness]," "without delay to serve the best interests of the pregnant unemancipated minor," and with "expedit[ion]," as the statute requires.

Second, and relatedly, in the absence of evidence to the contrary, we must presume that courts will follow the law. See Akron Ctr. for Reprod. Health, 497 U.S. at 515 ("Absent a demonstrated pattern of abuse or defiance, a State may expect that its judges will follow mandated procedural requirements."); Manning, 119 F.3d at 270 ("State judges are bound, just as federal judges are, to uphold the Constitution of the United States and to follow the opinions of the United States Supreme Court."); cf. Falcone v. Stewart, 120 F.3d 1082, 1087 (9th Cir. 1997) ("[A] defendant can legitimately expect that the courts will follow the law."), vacated on other grounds, 524 U.S. 947 (1998). The Oklahoma Act, on its face, complies with Bellotti in that it requires Oklahoma courts to issue prompt decisions and provide for expeditious appeals, all in accordance with the best interests of the pregnant unemancipated minor. We presume they will do just that.[10]

_____

[10] Nova points out that various other Oklahoma statutes give priority to other types of actions. See, e.g., Okla. Stat. tit. 10, § 7505-1.4 ("Any petitions filed with the court pursuant to the Oklahoma Adoption Code when docketed shall have priority over all cases pending on said docket. Any other proceedings concerning the adoption of a child shall be expedited by the court.") (footnote
(continued...)

We acknowledge that this decision conflicts with several of our sister circuits, who have held or suggested that parental involvement laws require specific time frames to satisfy Bellotti's standard. See Planned Parenthood of S. Ariz. v. Lawall, 180 F.3d 1022, 1024, 1028 (9th Cir. 1999) (finding parental consent statute "which provide[s] general time frames for expedited proceedings, but no specific time requirements" unconstitutional because "the trial court's review of a minor's application must be performed within specific, determinate time limits"); Causeway Med. Suite v. Ieyoub, 109 F.3d 1096, 1110-11 (5th Cir. 1997) (finding parental consent statute that provided bypass petitions "shall be heard . . . in a summary manner" "plainly conflict[s] with Bellotti[] because the juvenile court is not required to rule on the minor's application within any

[10](...continued)
omitted); Okla. Stat. tit. 11, § 44-110(D) (appeals from zoning board decisions "shall have preference over all other civil actions and proceedings"); Okla Stat. tit. 40, § 2-610(3) (review of labor commission decisions "shall be heard in a summary manner and shall be given precedence over all other civil cases"); Okla. Stat. tit. 68, § 2885(B) ("Appeals taken from all [tax] boards of equalization shall have precedence in the court to which they are taken."); Okla. Stat. tit. 70, § 7-101(C)(4) (appeals of school board annexation petitions "shall be given precedence over all other civil matters"); see also Okla. Const. art. V, § 11C ("The [Supreme] [C]ourt shall give all cases involving [legislative] apportionment precedence over all other cases and proceedings . . . .").

However, Nova provides no evidence to suggest that the existence of these priority statutes will in any way prevent the state courts from deciding bypass petitions in a prompt and expedient manner. There is nothing to suggest that there is an overage of these other cases on state courts' dockets such that a bypass petitions will have to "fall in line," nor any evidence that, even faced with a large quantity of "high priority" cases, the state courts cannot competently manage their dockets.

specified time"), overruled on other grounds Okpalobi v. Foster, 244 F.3d 405, 427 n.35 (5th Cir. 2001); cf. Zbaraz v. Hartigan, 763 F.2d 1532, 1539-41 (7th Cir. 1985) (enjoining parental notification statute, which provided that "an expedited confidential appeal shall be available as the [Illinois] Supreme Court provides by rule," until such rules were established because the "general instructions . . . to promulgate rules" failed to "provide the framework for a constitutionally sufficient means of expediting the appeal") (quotations, alterations omitted), aff'd, 484 U.S. 171 (1987); Am. Coll. of Obstetricians & Gynecologists v. Thornburgh, 737 F.2d 283, 296-98, 307 (3d Cir. 1984) (enjoining parental consent statute until the Supreme Court of Pennsylvania complied with the statutory mandate to "promulgate rules assuring confidentiality and promptness of disposition"), aff'd, 476 U.S. 747 (1986); but see Manning, 119 F.3d at 270-72 (rejecting argument that statute which failed to adopt specific time frames for appellate court proceedings and decisions above state superior court failed to satisfy Bellotti; "It is improper for a federal court to assume easily, without factual support of such findings, that state courts will not comply with the . . . expedition mandates of the Supreme Court.").

Notwithstanding the concerns expressed by these courts, we conclude that the statutory mandates here for "prompt" and "expeditious" judicial review of a bypass request, conducted in the best interests of the unemancipated pregnant

- 15 -

minor likely complies with the Supreme Court's mandate for "sufficient expedition." Thus, at this preliminary injunction stage, where Nova is making only a facial challenge with no evidence that unemancipated minors are not being given expeditious bypass review, we conclude that Nova has failed to carry its burden of establishing a substantial likelihood of success on the merits of its claim.

## CONCLUSION

As the Oklahoma Act, on its face, satisfies the Supreme Court's requirement for an expeditious decision on a judicial bypass petition, Nova has not shown a "substantial likelihood of success on the merits" sufficient to obtain a preliminary injunction. The decision of the district court is therefore AFFIRMED.

No. 05-5085, *Nova Health Systems v. Edmondson*

**MURPHY**, Circuit Judge, concurring specially.

Oklahoma's newly enacted statute governing the reproductive rights of unemancipated minors requires parental notification at least forty-eight hours prior to the termination of a minor's pregnancy. Okla. Stat. tit. 63, § 1-740.2. The statute contains a judicial bypass procedure that "shall be confidential and shall be given precedence over other pending matters so that the court may reach a decision promptly and without delay so as to serve the best interests of the pregnant unemancipated minor." *Id.* § 1-740.3(C). In those circumstances when the state trial court refuses to bypass the parental notification requirements, "[a]n expedited confidential appeal shall be available." *Id.* § 1-740.3(D).

Nova Health Systems ("Nova") asserts Okla. Stat. tit. 63, § 1-740.3 is facially unconstitutional because it fails to set out a definitive, concrete time frame within which bypass proceedings must be completed. Without a concrete time frame, Nova argues, § 1-740.3 fails to comply with the Supreme Court's directive that judicial bypass proceedings "must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained." *Bellotti v. Baird*, 443 U.S. 622, 644 (1979).[1] Nova's assertion is not

[1]As noted in this court's decision, although *Bellotti* was a plurality opinion, it has subsequently been invoked by Supreme Court majorities and the courts of
(continued...)

without support.  *Planned Parenthood of S. Ariz. v. Lawall*, 180 F.3d 1022, 1024, 1028-32 (9th Cir. 1999); *Causeway Med. Suite v. Ieyoub*, 109 F.3d 1096, 1110-11 (5th Cir. 1997), *overruled on other grounds by Okpalobi v. Foster*, 244 F.3d 405, 427 n.35 (5th Cir. 2001); *See Zbaraz v. Hartigan*, 763 F.2d 1532, 1539-41 (7th Cir. 1985); *Am. Coll. of Obstetricians & Gynecologists v. Thornburg*, 737 F.2d 283, 296-97, 307 (3d Cir. 1984).  *But see Manning v. Hunt*, 119 F.3d 254, 270-72 (4th Cir. 1997).

Despite these authorities, the court rejects Nova's contentions and affirms the district court's denial of preliminary injunctive relief on the ground Nova has not demonstrated a substantial likelihood of success on the merits.  Majority Op. at 11, 14-15.  According to the court's opinion, two points are critical.  First is the complete absence of evidence in the record "that there is, has been, or will be any impermissible delay as to bypass petitions." *Id*. at 12.  Second, in view of the state of the record on appeal, is the presumption that the Oklahoma state courts will follow the law and protect the constitutional rights of the citizens of Oklahoma. *Id*. at 12-13.

Although the weight of authority favoring Nova's position gives me some pause, I must ultimately agree that Nova has not demonstrated a substantial

---

[1](...continued)
appeals have held the *Bellotti* requirements to be controlling.  Majority Op. at 8 n.7 (collecting cases).

-2-

likelihood of success on the merits. The outcome is compelled by the procedural posture of this case, i.e., a blunt facial attack on a state legislative enactment. *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 895 (1992) (holding that a law regulating reproductive rights is unconstitutional on its face if, "in a large fraction of the cases in which [the statute] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion"); *Jane L. v. Bangerter*, 102 F.3d 1112, 1116 (10th Cir. 1996) (holding that *Casey*'s undue burden standard applies to facial challenges to laws regulating reproductive rights).

*Bellotti* simply requires each step in a judicial bypass proceeding "be completed with . . . sufficient expedition to provide an effective opportunity for an abortion to be obtained." 443 U.S. at 644. In drafting laws like that at issue here, states are entitled to presume their judges will comply with the mandated procedural requirements, i.e., giving bypass proceedings priority over other matters and resolving the proceedings with expedition. *Cf. Ohio v. Akron Ctr. for Reprod. Health*, 497 U.S. 502, 515 (1990). There is nothing in *Bellotti* remotely suggesting a definitive, concrete time frame must be written into state law in order to satisfy the requirement of expedition. The reason may very well be that the need for expedition is intensely case specific and will often depend on factors unique to the individual unemancipated minor. Such factors could include,

among others, the mental, emotional, and physical health of the minor; the point of gestation[2]; and the availability of abortion providers at various points of gestation.[3] Without such defining facts, a court lacks context by which to judge the expedition necessary to preserve the window of opportunity for the safe and effective termination of a pregnancy. Thus, when faced with a state statute mandating bypass proceedings be given priority and be decided with expedition, and in the complete absence of any record evidence state courts will fail to fulfil that mandate, federal courts should hesitate to impose upon the states a rigid time frame for acting on bypass petitions.

Thus, consistent with the court's opinion, I conclude Nova has not carried its burden of demonstrating the absence of definitive, concrete time frames in § 1-704.3 renders the statute unconstitutional on its face. This decision does not, however, leave the reproductive rights of unemancipated minors in Oklahoma unprotected. As noted above, the outcome in this case turns almost entirely on the procedural posture of the case, i.e., a facial challenge to a state statute when there is absolutely no record evidence Oklahoma state courts will fail to comply with the statutory mandate for expedition. Any unemancipated young woman who

---

[2]A later term abortion being more dangerous than an earlier term abortion.

[3]Assuming a local provider of reproductive services only providing abortions until the sixteenth week of gestation, all other things being equal, a bypass proceeding initiated in the fifteenth week of gestation would require greater expedition than one initiated in the twelfth week.

-4-

is not afforded the expedition constitutionally required by the circumstances of her particular case is, however, free to proceed to federal court with an as-applied challenge to § 1-704.3. Such proceedings themselves must, of course, be resolved with expedition, so that the federal courts do not fail in their duty to protect the constitutional rights of a citizen of the United States. Although some might bemoan the necessity to proceed with as-applied challenges, such a result is both necessary and appropriate under the particular circumstances of this case.

With these additional observations, I join the court's opinion.