BACHARACH, Circuit Judge,
concurring in part and dissenting in part.
The majority concludes that Planned Parenthood Association of Utah (“PPAU”) *1267 has satisfied its burden on each of the four elements of the test for a preliminary injunction. Accordingly, the majority reverses and remands with instructions to grant PPAU’s motion for a preliminary injunction. I join the majority’s discussion of the equal protection claim. See Maj. Op. at 1252-58. But I respectfully dissent from the majority’s disposition of the claims involving unconstitutional conditions. On these claims, I believe that the district court acted within its discretion in concluding that PPAU had not shown a likelihood of success.[1]
PPAU’s claims grew out of Governor Herbert’s directive that the Utah Department of Health terminate its contractual relationships with PPAU. According to PPAU, this directive placed unconstitutional conditions on PPAU’s exercise of its
1. First Amendment right to advocate for reproductive choice and associate with the national Planned Parenthood organization for purposes of pro-choice advocacy and
2. Fourteenth Amendment right to provide access to abortion services.
I believe that the district court acted within its discretion in concluding that PPAU had not shown a likelihood of success on the claims involving unconstitutional conditions.
I. We review the district court’s decision for an abuse of discretion.
We review the district court’s ruling for an abuse of discretion. Heideman v. S. Salt Lake City, 348 F.3d 1182, 1188 (10th Cir.2003). A district court abuses its discretion if it “commits an error of law, or is clearly erroneous in its preliminary factual findings.” Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1243 (10th Cir.2001) (quoting Am. Civil Liberties Union v. Johnson, 194 F.3d 1149, 1155 (10th Cir.1999)).
II. We should not relax PPAU’s burden to demonstrate likelihood of success on the merits.
PPAU urges us to relax the likelihood-of-success element. According to PPAU, it satisfied the other elements for a preliminary injunction, which softens the burden on likelihood of success to require only a showing that the issue is serious, substantial, difficult, and doubtful. Appellant’s Opening Br. at 39-40. For this argument, PPAU relies on Nova Health Systems v. Edmondson, 460 F.3d 1295, 1298 n.6 (10th Cir. 2006). I disagree because Nova Health Systems has been implicitly overruled by Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).[2]
Before Winter was decided, we held that the likelihood-of-success element is “somewhat relaxed” when the other three elements “tip decidedly” in favor of the mov-ant. Heideman v. S. Salt Lake City, 348 F.3d 1182, 1189 (10th Cir.2003) (emphasis in original). This approach is no longer tenable in light of Winter. In Winter, the Supreme Court addressed the Ninth Circuit’s relaxed standard for irreparable injury, which had required a movant to show only a “possibility” of irreparable injury if the movant demonstrated a strong likelihood of prevailing on the merits. Winter, 555 U.S. at 21, 129 S.Ct. 365. The Supreme *1268 Court rejected this relaxed standard as “too lenient.” Id. at 22, 129 S.Ct. 365.
The Fourth Circuit Court of Appeals extended Winter to the likelihood-of-success inquiry, holding that the court could no longer apply a relaxed standard for likelihood of success. Pashby v. Delia, 709 F.3d 307, 320-21 (4th Cir.2013). In dicta, the D.C. Circuit has likewise indicated that “a likelihood of success is an independent, free-standing requirement for a preliminary injunction.” Sherley v. Sebelius, 644 F.3d 388, 393 (D.C.Cir.2011) (quoting Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1296 (D.C.Cir.2009) (Kavanaugh, J., concurring)).
The Second, Seventh, and Ninth Circuits have upheld their relaxed likelihood-of-success standards in the face of Winter. See Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir.2011); Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35-38 (2d Cir.2010); Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co., 582 F.3d 721, 725 (7th Cir. 2009).
I disagree with these courts and agree with the Fourth Circuit and the D.C. Circuit. In Winter, the Supreme Court reasoned that
• “plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction” and
• issuing a preliminary injunction after applying a less-demanding test is inconsistent with the Court’s characterization that “injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.”
Winter, 555 U.S. at 22, 129 S.Ct. 365 (emphasis in original). In the same opinion, the Court reiterated that to obtain a preliminary injunction, a plaintiff must prove not only a likelihood of irreparable injury but also a likelihood of success on the merits. Id. at 20, 129 S.Ct. 365. And if the Court disallowed softening of the burden on irreparable injury because of the need for the movant to clearly show entitlement to a preliminary injunction, we should not allow entry of a preliminary injunction based only on a possibility of success on the merits. Winter requires a movant to establish each of the four preliminary injunction elements and does not allow relaxation of the burden on one element based on the proof of another. Thus, I would decline to apply the relaxed standard in district court. There, PPAU had to show that it was likely to succeed on the merits.
III. The district court acted within its discretion in concluding that PPAU was unlikely to persuade the jury that Governor Herbert had acted with a purpose of interfering with constitutionally protected conduct.
Applying the proper test, the district court concluded that PPAU was unlikely to succeed on the merits, reasoning that PPAU could not prove that Governor Herbert issued the directive as punishment for the exercise of constitutional rights. This ruling fell within the district court’s discretion. See Verlo v. Martinez, 820 F.3d 1113, 1128 (10th Cir.2016) (applying the abuse-of-discretion standard to the inquiry on likelihood of success).
As noted, PPAU claims that Governor Herbert put unconstitutional conditions on PPAU’s exercise of
• its First Amendment rights to advocate for reproductive choice and associate with others in furtherance of such advocacy and
• its Fourteenth Amendment right to provide abortion-related services.
*1269 The First Amendment protects PPAU’s pro-choice advocacy and association in furtherance of pro-choice advocacy. See Hill v. Colorado, 530 U.S. 703, 714-15, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000); City of Dallas v. Stanglin, 490 U.S. 19, 24, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989); Planned Parenthood of Kan. and Mid-Mo. v. Moser, 747 F.3d 814, 838-39 (10th Cir.2014). And I assume, for the sake of argument, that PPAU has a Fourteenth Amendment right to provide abortion-related services. Cf. Planned Parenthood of Mid-Mo. & E. Kan., Inc. v. Dempsey, 167 F.3d 458, 464 (8th Cir.1999) (stating that a Planned Parenthood affiliate’s right to perform abortions “is derived directly from women’s constitutional right to choose abortion”).
At trial, PPAU would need to show that its protected conduct — advocacy for reproductive choice, association with pro-choice advocates, and provision of abortion services — was a substantial or motivating factor for Governor Herbert’s directive. See Moser, 747 F.3d at 839. If PPAU had made this showing, the burden would shift to the defendants to show that the governor “would have taken the same action even in the absence of the protected conduct.” Bd. of Cty. Comm’rs v. Umbehr, 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996).[3]
The district court concluded that PPAU had failed to show that Governor Herbert’s animus toward abortion was a substantial or motivating factor in issuing the dire'ctive. This conclusion fell within the district court’s discretion. In determining PPAU’s likelihood of success on the merits, the district court had little evidence to go on. Though PPAU bore the burden of proof on likelihood of success, PPAU presented no testimony at the preliminary injunction hearing. Based on the sparse record, the district court could easily conclude that Governor Herbert believed the allegations of illegality from the videos, just as he said he did.
The majority contends that Governor Herbert “admitted that the accusations made by [the Center for Medical Progress] in the videos regarding Planned Parenthood and its other affiliates had not been proven and indeed were false.” Maj. Op. at 1261-62. I respectfully disagree with this interpretation of the record.
For its interpretation of the record, the majority relies on (1) excerpts from PPAU’s unsworn complaint and (2) an excerpt from the defendants’ brief in district court opposing PPAU’s motion for a preliminary injunction. See id. The unsworn complaint is not evidence. But even in the complaint, PPAU does not allege that Governor Herbert conceded that the allegations were false. Instead, PPAU alleges only that Governor Herbert acknowledged that the conduct depicted in the videos had not taken place in Utah. Appellant’s App’x, vol. I at 12. In addition, the majority cites page ix of the defendants’ brief in district *1270 court, opposing PPAU’s motion for a preliminary injunction. But this excerpt again does not suggest that Governor Herbert conceded that he had mistakenly interpreted the video evidence or that this evidence was false. Nowhere has PPAU presented evidence of a concession by Governor Herbert that the video evidence was false or misinterpreted.
Our task is not to assess the soundness of the governor’s decision. Instead, we must decide whether the district court had the discretion to conclude that the fact-finder was likely to regard Governor Herbert’s motivation as something other than punishment of PPAU for exercising its constitutional rights.
In my view, the district court did not abuse its discretion. This conclusion is supported by Governor Herbert’s statements that the directive was based on videos depicting purportedly illegal activity by an affiliated entity.[4] Appellant’s App’x, vol. 1 at 51 (Governor Herbert’s official public statement, following the directive).[5] Indeed, PPAU even alleged in the complaint that Governor Herbert had based his directive on allegations of misconduct against affiliates of Planned Parenthood. Id. at 7,11.
PPAU points to Governor Herbert’s contemporaneous acknowledgment that the pass-through funding was not used for abortion services, contending that the acknowledgment was unnecessary and served only to distance the directive from abortion. But PPAU provides no evidence to support this contention. In my view, the district court had the discretion to credit Governor Herbert’s stated reason for issuing the directive.
As further evidence of pretext, PPAU points to the temporal proximity between the release of the videos and the directive, arguing that “Governor Herbert waited until the political moment was ripe to retaliate against PPAU.” Appellant’s Opening Br. at 64. The defendants interpret this temporal proximity as evidence that the governor was heavily influenced by the Center for Medical Progress videos. Rejecting this interpretation, the district court credited the defendants’ explanation for the directive. That decision was reasonable and within the district court’s discretion.
PPAU’s only direct evidence is a memorandum of talking points for a pro-life event that Governor Herbert attended after issuing the directive. The talking points, which were drafted by Governor Herbert’s staff, included statements that (1) the directive had been based on Governor Herbert’s commitment to the “Right to Life” and (2) Governor Herbert had sent “a strong message” that “Utah values the sacred nature of human life.” Appellant’s App’x, vol. 2 at 391-92. But there is no evidence of Governor Herbert’s approval or use of these talking points. See Oral *1271 Ai’g. at 14:15-15:08 (PPAU counsel admitting that Governor Herbert had not used the talking points and that the talking points had never been publicly released). Because Governor Herbert neither prepared nor used the talking points, the district court could reasonably decline to rely on them.
PPAU also points to six forms of circumstantial evidence:
1. Governor Herbert’s attendance at a pro-life event days after the directive was issued, where Governor Herbert reportedly stated that “I’m here today to add my voice to yours and speak out on the sanctity of life” (Appellant’s App’x, vol. 1 at 59-60),
2. political efforts across the country to defund Planned Parenthood affiliates in reaction to the videos (Id. vol. 2 at 399),
3. Governor Herbert’s admission that PPAU was not directly implicated in the Center for Medical Progress videos (Id. vol. 1 at 56),
4. investigative reports debunking allegations that other Planned Parenthood affiliates had engaged in illegal conduct (Id. vol. 2 at 398),[6]
5. Governor Herbert’s purported knowledge that the directive would harm Utah citizens (Id. at 336-59 (internal communications between officials at the Utah Department of Health)),[7] and
6. Governor Herbert’s statement that he stood by his actions prohibiting Utah from acting as a pass through for federal funds to PPAU (Id. at 394, 396).
Based on this circumstantial evidence, PPAU urges an inference that the governor retaliated against PPAU for constitutionally protected conduct. But again, the district court could reasonably have relied on Governor Herbert’s stated reason for issuing the directive, and this reliance did not constitute an abuse of discretion. Thus, I would uphold the district court’s conclusion that PPAU did not show a likelihood of success on the merits of the claims involving unconstitutional conditions.
IV. Conclusion
I respectfully disagree with the majority’s conclusion that PPAU has shown a likelihood of success on the merits of the claims involving unconstitutional conditions. Accordingly, I would affirm the district court’s denial of PPAU’s motion for a preliminary injunction.

. In light of this conclusion on likelihood of success, I would decline to address the three other elements of the test for a preliminary injunction.

. The majority also requires proof of likelihood of success and has not applied the relaxed standard urged by PPAU. But because the majority concludes that PPAU is likely to succeed even under the traditional standard, the majority does not decide whether to relax PPAU’s burden on likelihood of success.

. The majority contends that the "defendants have never asserted that Herbert would have issued the Directive absent the release of the CMP videos.” Maj. Op. at 1262. But the release of the videos is not the constitutionally protected conduct asserted by PPAU; the constitutionally- protected conduct is PPAU’s pro-choice advocacy, association with similar advocates, and provision of abortion services. Thus, the defendants must show that Governor Herbert would have issued the directive in the absence of PPAU’s pro-choice speech, affiliations, and abortion services. The defendants argued throughout that Governor Herbert would have issued the directive regardless of the allegedly protected conduct. See Appellee’s Resp. Br. at 48 (arguing that the district court correctly concluded that PPAU’s constitutional claims are not likely to succeed on the merits because "neither abortion itself, nor speaking about it, nor associating with others to advocate for it had anything to do with- the Governor’s decision”); Dist. Ct. Docket No. 19 at 28-30 (defendants making the same argument in response to PPAU’s motion for a preliminary injunction).

. The Salt Lake Tribune also reported that Governor Herbert had said:
We now have a video where [Planned Parenthood is] selling fetus body parts for money and it’s an outrage and the people of Utah are outraged. I'm outraged. So for coloring outside the lines, Planned Parenthood forfeits some of their benefits.
Appellant’s App'x, vol. 1 at 56.

. The majority states that Governor Herbert apparently issued the directive based on a mistaken assumption that the video had involved PPAU’s conduct. I respectfully disagree. The record reflects Governor Herbert’s understanding from the outset that the video had depicted conduct by an affiliated Planned Parenthood chapter, not PPAU itself. See Appellant’s App'x, vol. I at 56. But PPAU’s claim involves reliance on unconstitutional conditions, not a mistake. Thus, the majority acknowledges that if Governor Herbert had issued the directive based on a mistake, the defendants would be likely to prevail on a claim of unconstitutional conditions. Maj. Op. at 1261.

. On appeal, PPAU asserts that every governmental agency investigating the videos has exonerated Planned Parenthood. Appellant’s Opening Br. at 64. For this assertion, PPAU has relied solely on
• an email transmitting an article from a website called "Media Matters for America” (Appellant’s App’x at 387-88) and
• two web articles in the Hujfington Post (Id. at 398-401, 403-04).

. The record also contains evidence that Governor Herbert thought that the directive would not harm Utah citizens. See Appellant’s App’x, vol. 1 at 55 (Governor Herbert stating that the federal funds would still be used to benefit Utah citizens, as the funds would be "put into the marketplace with other qualified providers”).